J-S88017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.T.L., T.M.L., D.N.L. AND M.E.J.D.L., MINORS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.T.B., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 751 EDA 2016 |

Appeal from the Decree February 5, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  CP-51-AP-0000769-2015,
CP-51-AP-0000770-2015, CP-51-AP-0000771-2015,
CP-51-AP-0000772-2015, CP-51-DP-0000323-2014,
CP-51-DP-0001341-2014, CP-51-DP-0001342-2014,
CP-51-DP-0001343-2014

BEFORE:  OLSON, RANSOM, and STRASSBURGER[1], JJ.

MEMORANDUM BY RANSOM, J.:                    **FILED January 12, 2017**

Appellant, D.T.B. ("Father"), appeals from the order in the Philadelphia County Court of Common Pleas, which terminated his parental rights to his minor children, M.E.J.D.L., N.T.L., T.M.L., and D.N.L., pursuant to the Adoption Act, 23 Pa.C.S. §§ 2511(a)(1), (2), (5), (8), and 2511(b).  After a thorough review of the record, we affirm.

The relevant facts are as follows:

The family in this case became known to [the Department of Human Services] DHS on November 11, 2013, when DHS received a substantiated General Protective Services ("GPS") report alleging that Mother's home was without heat or food, and

---

[1] Retired Senior Judge assigned to the Superior Court.

that [M.E.J.D.L.] had cerebral palsy and was left alone or with inappropriate caregivers. Another GPS report was received by DHS on December 6, 2013, alleged that [M.E.J.D.L.] was missing medical appointments. Over the course of 2013, [M.E.J.D.L.] missed thirteen medical appointments. DHS filed an urgent petition for [M.E.J.D.L.] on February 5, 2014. [M.E.J.D.L.] was adjudicated dependent and committed to DHS on March 7, 2014. She was placed with E.L. ("Foster Mother"), her maternal grandmother. [M.E.J.D.L.] is a very medically needy child. Mother was present at the time of the adjudication, where the court ordered her to attend substance abuse treatment. In March 2014, Mother began attending Caton Village, an inpatient substance abuse treatment facility. Mother was allowed to have the three other Children reside with her at the inpatient facility. Mother's goals under the April 16, 2014, Family Service Plan ("FSP") were to participate in family therapy, stabilize mental health, attend drug and alcohol treatment, maintain sobriety and secure safe living conditions for the Children. Father's FSP goals were to obtain housing, attend all hearings and ensure the Children attend all medical appointments. On May 9, 2014, another GPS report alleged that Mother used physical discipline against the Children. The treatment facility sought to transfer Mother elsewhere because of altercations with other patients. Foster Mother removed the three children from the treatment facility on May 20, 2014, and Mother left the program the same day without successfully completing treatment, against medical advice. On June 2, 2014, DHS filed urgent petitions for N.T.L., T.M.L. and D.N.L. These three children were adjudicated dependent on June 18, 2014. They were committed to DHS and placed with Foster Mother. The court also ordered Mother and Father to the Achieving Reunification Center ("ARC") for additional services, and Mother was ordered to the Clinical Evaluation Unit ("CEU") for forthwith drug screen and dual diagnosis assessment. Both parents were offered supervised visitation. Over the next year, Mother and Father were found non-compliant at every permanency review. The trial court found at every review that DHS had made reasonable efforts to reunify the family. DHS filed petitions to involuntarily terminate Mother's and Father's parental rights, and to change the Children's permanency goals to adoption on October 29, 2015.

Trial Court Opinion, 4/20/16, at 1-2.

At the hearing, the trial court terminated Father's parental rights as to all four children pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), as well as 2511(b), and changed the children's goal to adoption. On March 7, 2016, Father's counsel timely filed a notice of appeal as well as a statement pursuant to Pa.R.A.P. 1925(b).

Father raises the following issues on appeal:

(1) Did the court below err in finding that grounds for termination of parental rights had been proven by "clear and convincing evidence"?

(2) Did the court below err in finding that the Department of Human Services (hereinafter, "DHS"), had met its burden in proving grounds under 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5) and (8)?

(3) Did the court below err in finding that DHS had met its burden to prove that termination would be in the children's best interest, under § 2511(b)?

(4) Did the court below err in denying Due Process and Equal Protection of Law to Appellant, [D.T.B.], Father, as guaranteed by the Constitution of the United States and the Commonwealth of Pennsylvania?

Our standard of review regarding orders terminating parental rights is as follows:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the

record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005). In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence[2] that the asserted grounds for seeking the termination of parental rights are valid. *Id.*, at 806.

"The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. and J.G., Minors*, 855 A.2d 68, 73-74 (Pa. Super. 2004). "If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B., Jr.*, 835 A.2d 387, 394 (Pa. Super. 2003).

While Father's appeal raises issues pertaining to all of the grounds for termination, this Court may affirm the trial court's decision with regard to any one subsection of section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2014) (*en banc*). As such we will focus on 2511(a)(1) and 2511(b), which provide as follows:

### § 2511. Grounds for involuntary termination

---

[2] The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re J.L.C. and J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

> **(a)** **General rule.** – The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> \* \* \*
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filling of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> \* \* \*
>
> **(b) Other considerations.** – The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6), or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

This Court has explained the review of a challenge to the sufficiency of the evidence supporting the involuntary termination of a parent's rights pursuant to Section 2511(a)(1) as follows:

> To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.

\*\*\*

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citations omitted).

> [T]o be legally significant, the [post-abandonment] contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship and must also demonstrate a willingness and capacity to undertake the parental role.  The parent wishing to reestablish his parental responsibilities bears the burden of proof on this question.

*In re Z.P.*, 994 A.2d 1108, 1119 (Pa. Super. 2010) (citation omitted); *see also In re Adoption of C.L.G.*, 956 A.2d 999, 1006 (Pa. Super. 2008) (*en banc*).

This Court has emphasized that a parent does not perform his or her parental duties by displaying a "merely passive interest in the development of the child."  *In re B.N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (internal citations omitted).  We have explained:

> A child needs love, protection, guidance and support.  These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child.  Thus, this court has held that the parental obligation is a positive duty which require affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a

genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with…her physical and emotional needs.

*Id.*

Further, we have stated that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities *In re A.L.D.*, 797 A.2d 326, 327 (Pa. Super. 2002). A parent's vow to cooperate after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340.

By Father's own admission, he has made no efforts toward assuming responsibility for his children. Father admitted that he "can't really do much for his kids at the moment." Notes of Testimony (N.T.), 12/11/15, at 75. Father did not utilize any of the resource offered by DHS. He is homeless and indicated to the court that in three to six months he would have a plan to provide for his children. N.T. at 82. Father's vow to cooperate after eighteen months is disingenuous. Father has not demonstrated a desire to

parent or maintain a relationship with his children. He attended only one supervised visit the entire time the children were in care. N.T. at 65.

In reaching its decision, the trial court noted that, in the six-month period preceding the petition for involuntary termination, Father did not complete any of his objectives and, throughout the life of the case, Father has never been compliant with court orders. Trial Court Opinion at 8. The trial court found that "Father, by his conduct, had refused and failed to perform parental duties, so termination under this section was proper." *Id.*

Accordingly, our review of the record supports the trial court's conclusion that termination of Father's parental rights was proper under Section 2511(a)(1). As noted above, this Court need only agree with the trial court's decision to terminate parental rights under one subsection of Section 2511. *See In re B.L.W., supra.*

After we determine that the requirements of Section 2511(a) are satisfied, we proceed to review whether the requirements of Section 2511(b) are satisfied. *See In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). Pursuant to Section 2511(b), the court, in terminating the rights of a parent, shall give primary consideration to the developmental, physical, and emotional needs and welfare of a child.

Kristen Jenkins, Children's Choice social worker, testified that Father only visited the children once during the entire eighteen months they were in care. N.T. at 65. Since the visit in March 2015, Father never contacted Ms.

Jenkins for additional visits. *Id.* at 66. Based on the lack of visitation, Ms. Jenkins reasoned that the children did not maintain an attachment to Father, thus they would suffer no irreparable harm if Father's rights were terminated. *Id.* at 67. Furthermore, Ms. Jenkins testified that the children look to foster mother to meet all of their needs. *Id.* at 68. The children view Foster Mother as the parental figure in their lives. *Id.*

As there is competent evidence in the record that supports the trial court's credibility and weight assessments that severing the bond with Father would not cause the children irreparable harm, we conclude that the trial court did not abuse its discretion in terminating Father's parental rights to the Children with regard to section 2511(b).

Finally, Father argues that the trial court committed errors depriving him of his Due Process and Equal Protection rights. Father's reliance on *Stanley v. State of Illinois*, 92 S. Ct. 1208 (1972) is misplaced. In that case, the Supreme Court held that a parent was entitled to a hearing on his fitness as a parent before his children were taken away and, thus, the State had violated his equal protection of the laws guaranteed by the Fourteenth Amendment. *Id.* at 1212.

In the instant case, Appellant had a hearing on the termination of parental rights petition. At which, evidence was presented regarding his fitness as a parent. Trial counsel had the opportunity to cross-examine witnesses and present witnesses if they wished. Furthermore, Appellant

testified at trial and had the opportunity to refute testimony. Father's fourth issue is without merit, the trial court did not violate Father's due process rights. Accordingly, after a careful review, we affirm the order terminating Father's parental rights on the basis of 2511(a)(1) and (b).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/12/2017