882 A.2d 481 (2005)
In re C.V., a Minor.
Appeal of M.J., Mother.
Superior Court of Pennsylvania.
Argued April 19, 2005.
Filed August 12, 2005.
*482 Sharon M. Biasca, Pittsburgh, for appellant.
Wendy Kobee, Pittsburgh, for CYS, appellee.
Judith E. Patterson, Pittsburgh, for Kids Voice, appellee.
Before: ORIE MELVIN, BENDER and BECK, JJ.
ORIE MELVIN, J.:
¶ 1 Appellant, M.J. (Mother), appeals from the order which changed the permanency goal plan for the minor, C.V., from reunification to adoption. Additionally, the minor's guardian ad litem filed a Motion to Quash. After careful review of this motion, we quash the appeal and remand for further proceedings.
¶ 2 The trial court aptly summarized the procedural history of this matter as follows:
On September 23, 2000, a Petition for Dependency was filed by the Office of Children Youth and Family Services (hereinafter "CYF"). Incident thereto, on October 18, 2000, C.V. was placed with her Maternal Grandmother and CYF was ordered to make a referral to foster care.
On January 26, 2001, the child was returned to her Mother at the Whale's Tale Drug & Alcohol Treatment Program. Mother was not permitted to leave the program with the child until further Order of Court. As of the review hearing on April 26, 2001, the child remained with Mother. CYF provided in-home services and Mother was required to have weekly random urine screenings. As of the July 19, 2001 review hearing, Mother had relapsed and was in an inpatient drug and alcohol treatment program. The child was placed with maternal grandmother once again. CYF was ordered to file for a shelter hearing if Mother tested positive for drugs.
On September 28, 2001, an Attachment Order was entered as the whereabouts of Mother and the child were unknown. It was further ordered that C.V. was to be taken into custody as Mother had relapsed on drugs once again. On October 18, 2001, Mother and child's whereabouts remained unknown and the Attachment Order continued to remain in effect. Furthermore, the Order provided that when found, the child was to be taken into custody and placed with paternal grandparents pending a shelter hearing.
On October 26, 2001, a shelter hearing was held. The child was again placed with maternal grandmother. Mother was ordered to have a urine screen that day. Supervised visits between Mother and child, and a drug and alcohol assessment for Mother were ordered. Mother was ordered to follow through with all recommendations incident to that assessment. On November 14, 2001, an Amended Order was entered requiring Mother to have weekly random urine screens.
On January 17, 200[2], the child was ordered to remain with maternal grandmother. Mother's visits continued to be supervised and scheduled weekly. Mother was again ordered to complete drug and alcohol treatment and mental health treatment, obtain housing, and maintain contact with the child. Random weekly urine screens were ordered to continue.
As of the review hearing on May 3, 2002, the child remained with maternal grandmother, the visits with Mother remained status quo, and Mother was ordered to follow her family service plan *483 goals. On July 9, 2002, a guardian ad litem was appointed for the child.
On August 14, 2002, the Court entered an Order requiring the child to remain in the custody of maternal grandmother. That Order also specified that the goal was still reunification and that the Mother's family service plan goals as set forth in the January 17, 2002 Order of Court remained in effect. CYF was ordered to schedule random urine screens for Mother. Also, the weekly supervised visits were extended to be longer day visits. At the November 13, 2002 review hearing, the Order remained the same as the August 14, 2002 Order.
On February 12, 2003, after a review hearing, the child was again ordered to remain with Maternal Grandmother. Mother was ordered to continue to comply with Family Service Plan goals. Visitation was changed to unsupervised weekend visits with Mother. CYF was permitted to return the child to Mother after three (3) successful weekend visits. Sometime after February 12, 2003, the child was apparently returned to Mother because at the review hearing on May 13, 2003, the child was allowed to remain in Mother's custody. CYF was given permission to place the child in respite care. At the August 13, 2003 review, the child was permitted to stay in Mother's custody. However, on October 31, 2003, there was a shelter hearing and C.V. was ordered to remain in the CYF foster home in which she had been placed. Mother and Father were ordered to submit to random urine screens. On November 6, 2003, the Hearing Officer ordered that the child was to remain with the foster care parent. The goal remained reunification. The Family Service Plan goals for Mother were to continue with drug and alcohol and mental health treatment. CYF was permitted to arrange overnight visitation with Mother and child. Random urine screens were to be scheduled with the Allegheny County Health Department. CYF was given permission to return the child to Mother upon agreement.
On February 19, 2004, an Order was entered which continued the review hearing to March 31, 2004. In addition, notice was given to Mother that a goal change was to be considered at the March 31, 2004 hearing. CYF was ordered to provide written interactional reports to all counsel 10 days prior to the hearing, as well as provide Mother with transportation to the rescheduled hearing. On March 26, 2004, the Court reversed a portion of the Hearing Officer's decision. CYF was also ordered to provide tickets from downtown Pittsburgh to the South Side and back downtown for Mother to attend the next hearing before Hearing Officer Cancilla. At the March 23, 2004 hearing the case was continued to April 28, 2004 so as to permit the testimony of Dr. Neil Rosenblum. On April 28, 2004, after a full hearing by Hearing Officer Cancilla, the goal was changed from reunification to adoption. [Notice of Appeal to this Court was filed on May 26, 2004.]
Trial Court Opinion, 10/29/04, at 3-6.
¶ 3 Mother presents the following questions for review:
1. Did the trial court abuse its discretion in changing Child's permanency goal from reunification to adoption where expert testimony showed an existing bond between Mother and Child that makes reunification a viable goal that could be achieved within a reasonable period of time?
2. Did the trial court abuse its discretion in changing Child's permanency goal from reunification to adoption *484 where reasonable efforts were not made by the county agency to reunify Mother and Child?
Appellant's brief, at 4.
¶ 4 We are mindful that:
[a]n order granting a goal change pursuant to the Juvenile Act, 42 Pa.C.S.A. §§ 6301-6365, is final and appealable. Our standard of review in such cases is abuse of discretion. When reviewing such a decision we are bound by the facts as found by the trial court unless they are not supported in the record. Furthermore, in a change of goal proceeding, the trial court must focus on the child and determine the goal in accordance with the child's best interests and not those of his or her parents.
At each review hearing concerning a child who has been adjudicated dependent and removed from the parental home, the trial court must consider: the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved.
These statutory mandates clearly place the trial court's focus on the best interests of the child.
In the Interest of C.J.R., 782 A.2d 568, 569-570 (Pa.Super.2001) (quoting In the Interest of A.P., 728 A.2d 375, 378 (Pa.Super.1999) (internal citations omitted)).
¶ 5 Preliminarily, we note that the child's guardian ad litem filed a Motion to Quash, which was deferred to this panel for resolution. The guardian ad litem asserts, and CYF concurs, that the Administrative Orders currently directing the Allegheny County Court of Common Pleas Juvenile Court Hearing Officers Program require a party to request a de novo review hearing limited to specified issues as a prerequisite to appellate review by this Court. Failure to request a review hearing results in waiver of those issues.
¶ 6 This appears to be the first time that an appeal from a hearing officer's decision to change a permanency plan goal has been taken directly to this Court without an initial review by an Allegheny County trial court judge. The customary procedure, as outlined in the local administrative orders, is to file for a "Request for Review" and have the case heard by the assigned judge before any appeal to this Court is ripe. Specifically, the relevant portions of Administrative Order A-2 of 1999 provide as follows:

Appointment of Masters
1) In accordance with Pennsylvania's Juvenile Act, 42 Pa.C.S.A. § 6305, this Court hereby creates four full-time masters positions. Henceforth, these masters will be known locally as "hearing officers."
* * * *

Hearing Officers' Schedules
38) In furtherance of the one judge one family policy in operation in this Court, each hearing officer will be assigned to a judge or judges (if necessary) to form adjudication teams.
39) Cases shall be heard only by the judge to whom the case is assigned and the hearing officer assigned to that judge, absent exigent circumstances.
* * * *
49) Hearing officers shall set any case for a hearing before the judge with whom they collaborate and recommend contempt or other sanctions against anyone *485 who behaves in a contemptuous or inappropriate manner before them.
50) All hearings shall be tape recorded with all tapes being saved for four years, or any different length of time upon specific order of court.
51) Hearing officers shall hear all matters in the first instance except those matters exclusively reserved herein for judges. Accordingly, hearing officers shall hear changes of placement, waivers of criminal record, alterations of visitation schedules, goal changes, permanency planning reviews, emancipations, the closing of cases and all other matters not exclusively reserved herein for judges or specifically kept on a judge's list by order of court.
* * * *
58) Immediately at the conclusion of every hearing, the hearing officer shall provide all parties with a typed order with a judge's signature affixed thereto.

Review of Hearing Officers' Decisions
59) Within ten days after the date of the decision by the hearing officer, any party may seek review of such decision, or any part thereof, in accordance with the following procedure.
60) A Request for Review of a Hearing Officer Decision ("Request for Review") shall, set forth separate statements of matters complained of precisely and without discussion. Such precise statements may be followed by a paragraph of explanation to the extent the party filing such statement believes necessary.
61) Matters not raised in the Request for Review are deemed waived unless raised prior to the entry of the court's final order.
62) If no Request for Review is filed within the ten-day period, the decision of the hearing officer shall be binding upon all parties unless disapproved by the court.
63) If a Request for Review is filed, any other party may file a Cross Request for Review within ten days of the date of service of the original Request for Review.
64) Requests for Review and Cross Requests for Review, if any, shall be filed in the prothonotary's office in Juvenile Court and service thereof shall be made by mail, fax or personal service upon the judge to hear the Request for Review at her or his principal office, the hearing officer who entered the decision from which the Request for Review was filed at the hearing officer's central office located at 415 Allegheny Building, 429 Forbes Avenue, Pittsburgh, PA 15219, fax number XXX-XXX-XXXX, and all parties.
65) The judge's office upon whom the Requests for Review was served shall set the case for a hearing within thirty days of receipt of the Request for Review. The hearing shall be de novo as to all matters properly raised. Juvenile Court shall provide notice to all parties of the date and time set for the hearing.
Motion to Quash, 8/20/04, at Exhibit C.
¶ 7 Additionally, Administrative Order A-4 of 2001 at paragraph 19 clarifies that:
Decisions rendered by hearing officers shall be made in the form of an Order of Court, however, said Orders shall be considered a "Recommendation." A party may request that a Judge of this Court review the recommendation in the same manner as other recommendations of hearing officers may be reviewed.
Id. at Exhibit B.
¶ 8 Appellant's response to this motion to quash counters that the hearing officer's order became final after the passing of ten days without either party requesting a review *486 and is thus a final order subject to appellate review as is the case with any other order granting a goal change. She submits that the administrative orders are discretionary and merely provide a mechanism whereby parties may choose to seek review by a trial court judge but do not otherwise supersede her right to directly appeal to this Court.
¶ 9 After careful consideration of these arguments we find the procedures set forth in the administrative orders at issue are properly within the trial court's discretionary authority to invoke as contemplated by both the Juvenile Act and the Rules of Judicial Administration.
¶ 10 The applicable section of the Juvenile Act provides as follows:
§ 6305. Masters
(a) General rule.The governing authority may promulgate rules for the selection and appointment of masters on a full-time or part-time basis. A master shall be a member of the bar of this Commonwealth. The number and compensation of masters shall be fixed by the governing authority, and their compensation shall be paid by the county.
(b) Hearings before masters.The court of common pleas may direct that hearings in any case or class of cases be conducted in the first instance by the master in the manner provided in this chapter. Before commencing the hearing the master shall inform the parties who have appeared that they are entitled to have the matter heard by a judge. If a party objects, the hearing shall be conducted by a judge.
(c) Recommendations of masters. Upon the conclusion of a hearing before a master, he shall transmit written findings and recommendations for disposition to the judge. Prompt written notice and copies of the findings and recommendations shall be given to the parties to the proceeding.
(d) Rehearing before judge.A rehearing before the judge may be ordered by the judge at any time upon cause shown. Unless a rehearing is ordered, the findings and recommendations become the findings and order of the court when confirmed in writing by the judge.
42 Pa.C.S.A. § 6305.
¶ 11 We find Appellant's reliance upon this Court's decision in In re A.M., 365 Pa.Super. 516, 530 A.2d 430 (1987), for the proposition that the Juvenile Act does not contemplate exceptions or a request for review from a master's recommendations before appellate review may be taken to this Court, is unavailing for two reasons. First, the applicability of administrative orders setting forth additional rules with respect to the use of Masters in goal change cases was not at issue or addressed in that case. We specifically noted in discussing the use of exceptions in other family related cases that § 6305(b) did not contain similar provisions. Hence, the In re A.M. panel concluded that "[t]he failure of the act to specifically require exceptions or to mandate a review by the court, instead leaving this within the trial court's discretion, would appear to obviate review as a mandatory part of the post-adjudication procedure, such as required in support and divorce actions." In re A.M., 530 A.2d at 432 (emphasis added). We, therefore, were unwilling to deny appellate review based upon the failure to file exceptions in the absence of any evidence that the parties were aware of such a requirement.
¶ 12 Here, unlike in the case of In re A.M., the trial court exercised its discretion "to issue rules and regulations governing the conduct of the phases of work" assigned to Masters. See Publisher's Note following Pa.R.J.A. No. 706, 42 Pa.C.S.A. *487 (quoting Order of the Supreme Court of Pennsylvania, Eastern District, April 11, 1986, No. 55 Judicial Administration, Docket No. 1, at ¶ (4)). Consequently, Appellant was on notice that "[m]atters not raised in the Request for Review are deemed waived" and "[i]f no Request for Review is filed within the ten-day period, the decision of the hearing officer shall be binding upon all parties unless disapproved by the court." Administrative Order A-2 of 1999, at ¶¶ 61 and 62.[1] Thus, the parties were fully apprised by Administrative Order A-2 of 1999 of the specific procedure to follow for review of the hearing officer's decision.
¶ 13 Our second basis for disagreement with Appellant's reliance on In re A.M. is that the order appealed from has never been reviewed by a trial court judge to permit the judge to make the ultimate determination on the facts. We further noted in In re A.M. that the use of masters in juvenile cases "appears to be in response to the heavily burdened juvenile courts of the state and the provision for rehearing on cause shown is to permit the ultimate determination on the facts to be made by a judge." Id. 530 A.2d at 432. Instantly, the hearing officer merely entered a "Permanency Review Order" making certain findings and recommending a change of goal, which was pre-stamped with a judge's signature. There is no indication that a judge ever saw this order let alone reviewed and confirmed or adopted its findings and recommendations. Since our standard of review is abuse of discretion and dependent upon the facts as found by the trial court, unless they are not supported in the record, our review is impossible given the circumstances presented in this case. We simply are in no position to review determinations of a hearing officer that were not in some fashion confirmed by a trial judge's review.
¶ 14 While the Juvenile Act itself does not require post-adjudicative proceedings, such as a hearing on exceptions, be conducted before an appeal can be taken from a court-approved master's determination, the Act does clearly require that the Master (or in this case the hearing officer) "transmit written findings and recommendations for disposition to the judge." 42 Pa.C.S.A. § 6305(c) (emphasis added). In this case the hearing officer's findings and recommendations, as a consequence of not filing a request for review, were never transmitted to a judge for disposition or any type of review. Rather, after the filing of the notice of appeal the trial court obtained the transcript from the April 28, 2004 hearing and was forced to fashion an after the fact opinion limited to review of that transcript and the docket entries of record. This is not the procedure contemplated by the Juvenile Act. See 42 Pa. C.S.A. §§ 6305(c) and (d), supra.
¶ 15 As the trial court cogently observed:
By not requiring Appellant to comply with the Administrative Orders in place, the de novo review process, which has been established for purposes of giving the trial court the opportunity to review what has transpired before the Hearing Officer, is negated. Consequently, the Superior Court likely will be faced with numerous appeals similar to the present where multiple transcripts will be required to conduct a meaningful review. Furthermore, the trial court will be left in the untenable position of writing opinions supporting a Hearing Officer's decision without having held a de novo review.
*488 Trial Court Opinion, 10/29/04, at 3.[2] We agree with this analysis.
¶ 16 Furthermore, we find that the procedures set in place by Administrative Order A-2 of 1999 increases the efficiency of an overburdened juvenile court system by focusing the trial court's attention on the specific disagreements a party may have with the hearing officer's findings and may in fact alleviate the need for appellate review. At a minimum, such procedures allow the trial court to hear the evidence relative to the issues raised from a first person perspective and establish a crystallized record for this Court's review. In accordance with the forgoing discussion, we find Appellant's failure to seek review before an Allegheny County Court of Common Pleas trial judge pursuant to the applicable Administrative Order resulted in a lack of an evidentiary hearing to create a record for appeal. It is this record, established by a trial court judge, which enables the appellate court to determine whether the court findings are supported by competent evidence and whether the court considered the statutory factors when ordering the change. Accordingly, we conclude that the instant order of the hearing officer remains interlocutory until confirmed by subsequent order of a trial court judge.
¶ 17 We further note our disapproval of the practice of the hearing officer using an order pre-stamped with a judge's signature. This practice does not conform to the requirements of subsections 6305(c) and (d) of the Juvenile Act, which provides for disposition and confirmation in writing by a judge of the hearing officer's recommendations. We therefore urge the trial court to amend Administrative Order A-2 of 1999 by eliminating the practice of affixing a pre-stamped judge's signature to the hearing officer's order. Rather, we suggest that a better procedure would be to submit the hearing officer's findings and recommendations to the assigned judge for either confirmation or disapproval following the expiration of the ten-day period for filing a "Request for Review." This suggested procedure guarantees that a judge will make the ultimate determination on the facts and thereby create a final order in adherence with the dictates of § 6305 of the Juvenile Act. In light of this deficiency in the current Administrative Order, in the interests of justice we remand and direct the trial court to permit Mother to file a Request for Review nunc pro tunc specifying the issues sought to be reviewed within ten days after the parties receive notice of the remand of this record.
¶ 18 Appeal quashed. Case remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.
NOTES
[1] We note that this same language was included in the order appealed from.
[2] We note that the multiple transcripts referenced by the trial court are indeed a concern in the instant case. The trial court advises that out of the ten hearings held in regard to the permanency planning in this case the court was only able to obtain three of those transcripts.