J-S70016-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: K.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.W., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1086 EDA 2018 |

Appeal from the Decree March 12, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0000053-018,
CP-51-DP-0002087-2016

BEFORE: GANTMAN, P.J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.: **FILED JANUARY 08, 2019**

T.W. ("Father") appeals from the March 12, 2018 decree terminating his parental rights to K.W. ("Child"), born September 2016, and from the order changing Child's permanency goal to adoption. Because the trial court did not abuse its discretion in terminating his parental rights or in changing the permanency goal to adoption, we affirm.

The Philadelphia Department of Human Services ("DHS") became involved with Child in September 2016, after both D.M. ("Mother") and Child tested positive for marijuana at Child's birth. Mother also suffered from depression and schizophrenia. On September 21, 2016, Mother contacted DHS and informed them she was unable to care for Child and that Father had informed Mother he would not return Child to her. DHS learned that Father had left Child with Child's paternal aunt. DHS obtained an order for protective

custody for Child. On October 13, 2016, the trial court adjudicated Child dependent. The court ordered that Father was to have liberal unsupervised visits with Child.[1] The trial court held regular permanency review hearings. Following a January 26, 2017, permanency review hearing, the court decreased Father's visitation from liberal unsupervised to twice weekly supervised visits. Father's single case plan ("SCP") objectives included to participate in anger management classes, complete parenting classes, and follow-up with the Achieving Reunification Center ("ARC") regarding programs offered to him.

Following an April 24, 2017, permanency review meeting, the court noted Father resided with Mother in a boarding home. It referred Father to Behavioral Health Systems for an evaluation, consultation, and monitoring and ordered him to re-engage with ARC for services. He was to have weekly supervised visits with Child.

On July 26, 2017, the court held another permanency review hearing. Father did not appear at this hearing. Child was in respite care because paternal grandmother, with whom Child had been living, had been hospitalized. Father had been confirming and attending visits, but had declined ARC services. Father continued to reside with Mother. He had completed a Behavioral Health Systems evaluation, and had been referred to

_____

[1] The trial court found aggravated circumstances as to Mother based on prior orders involuntary terminating her parental rights, and ordered that the DHS need not make reasonable efforts to reunify Child with Mother.

Wedge for outpatient mental health services. The trial court ordered Father to reengage with ARC and ordered that the weekly supervised visits continue.

On October 10, 2017, the trial court found Child was residing with paternal grandmother in unsuitable living conditions, after she relocated. It committed Child to DHS custody. Father failed to attend this hearing.

Following a December 18, 2017, permanency review hearing, the trial court again referred Father to Behavioral Health Systems and ordered him to attend ARC for services. Father did not appear at this hearing either. During the period before the December 18, 2017 permanency review hearing, Father had attended only three of nine offered visits. Statement of Facts at ¶ qq.

On January 18, 2018, DHS filed a petition to terminate Father's parental rights to Child and a petition to change Child's goal to adoption. A process server served a subpoena on Father. Father signed the return of service on January 20, 2018. The subpoena stated that the hearing on the petitions would occur on March 12, 2018, at 9:30 a.m., and copies of the petitions were attached.

On March 12, 2018, the trial court held a hearing on the termination and goal change petitions. Father failed to appear.[2] Counsel for all parties stipulated that the case worker would testify consistent with DHS's Statement

---

[2] Craig Sokolow, Esquire, Mother's attorney, stood in for Father's counsel at the start of the hearing. Father's counsel arrived during cross-examination of the case manager.

of Facts, to the extent he or she had knowledge. However, the parties did not stipulate to the veracity of the Statement.

In addition to the stipulation, DHS presented the testimony of the case-worker currently assigned to the case, June Morrison. Morrison testified Father did not attend the parenting and anger management courses at ARC. N.T., 3/12/18, at 8. Although Father completed an evaluation at Behavioral Health Systems, he did not follow through with the recommended treatment. *Id.* Morrison noted Father changed the appointment for treatment numerous times, but never attended. *Id.*

Morrison testified that, after missing several visits, Father had resumed visits with Child on January 29, 2018, and had attended two visits since that date. *Id.* at 9, 11.

Morrison also testified regarding her observations when Father visited with Child. *Id.* at 9, 14. She noted that Father played with and fed Child. *Id.* at 14. However, Morrison did not believe Child would suffer irreparable harm if Father's rights were terminated, noting that Father had not taken on a parental role in Child's life. *Id.* at 9, 14-15.

Morrison testified that Child was in a pre-adoptive home, where she had been since October 2017, after she was removed from paternal grandmother's care. *Id.* at 9. Child's foster parent provided Child with her daily needs. *Id.* Child was doing fine, was bonding with foster parent, and was safe. *Id.* at 9-10.

Counsel for Father cross-examined Morrison, but did not present any witnesses or evidence.

The trial court found DHS established by clear and convincing evidence that termination of Father's parental rights was proper under 23 Pa.C.S.A. §§ (a)(1), (2), (5), and (8), and that termination would be in Child's best interest under section 2511(b). The trial court also changed Child's permanency goal to adoption.

On March 22, 2018, Father filed a motion to reconsider the termination order, and to open the record. Father claimed that although he had signed a return receipt for a subpoena on January 20, 2018, stating the date and time of the March, 12, 2018 hearing, he had subsequently traveled to California for a 30-day army reserve military training. Upon returning to Philadelphia he claims he "mis-remembered" the date, and allegedly arrived at the courthouse a day late, on March 13, 2018. Motion for Reconsideration, filed Mar. 22, 2018, at ¶ 2. He requested an opportunity to testify regarding his military training and relationship with Child. *Id.* at ¶ 3. The court denied the motion. On April 10, 2018, Father filed a timely notice of appeal.

Father raises the following issues on appeal:

> 1. Did the Trial court err and/or abuse its discretion by denying [Father's] Motion For Reconsideration of its Order and Decree of goal change and termination of his parental rights; given the totality of the circumstances of the case, should [Father] have been afforded an opportunity to be heard on Petitioner DHS's petitions to terminate and change the goal to adoption?

2. Did the Department of Human Services (DHS) sustain its burden under 23 Pa.C.S.A. §2511(a)(1), (2), (5) or (8) that Father's rights should be terminated when there was evidence that Father had completed and/or had been actively completing his permanency goals? (Summarizing [Father's] 1925(a) items 2 through [sic])

3. Was there was sufficient evidence presented to establish under 23 Pa.C.S.A. §2511(b) that it was in the best interests of the Child to terminate Father's parental rights?

4. Was there was sufficient evidence presented to establish that DHS had met its burden of proof under the Juvenile Act, 42 Pa.C.S.A. §6351 that changing the child's permanency goal to adoption best serve the needs and welfare of the child?

Father's Br. at 4.

In his first issue, Father argues the trial court erred in denying his request to open the record to allow his testimony.

Father cites no case law in support of his contention that the court erred in denying his motion to reconsider the order or re-open the record and, therefore, waived the claim. *See Commonwealth v. Delvalle*, 74 A.3d 1081, 1086–87 (Pa. Super. 2013) (finding "[f]ailure by the appellant to discuss pertinent facts or cite legal authority will result in waiver"); Pa.R.A.P. 2119(a) (providing "[t]he argument shall . . . have . . . the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent").

Furthermore, an order denying a motion for reconsideration is not reviewable. *Huntington Nat'l Bank v. K–Cor, Inc.*, 107 A.3d 783, 787 (Pa.Super. 2014) ("Pennsylvania case law is absolutely clear that the refusal of a trial court to reconsider, rehear, or permit reargument of a final decree is

not reviewable on appeal."). Therefore, even if he had preserved the claim, we would be unable to review it. Further, if we were able to review it, we would conclude the trial court did not abuse its discretion in denying reconsideration. Although Father stated he had been in California for training for 30 days, he does not assert he was not in Philadelphia on the date of the hearing. Rather, he states he "misremembered" the date.

In his second and third issues, Father argues DHS failed to present clear and convincing evidence that termination was proper under 23 Pa.C.S.A. §§ 2511(a) and (b). He argues he did not evidence a settled purpose to relinquish, or fail to perform, his parental duties, noting his "military obligations and [Child's] placement away from his family." Father's Br. at 15.

When reviewing orders terminating parental rights, we must "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). Where "the factual findings are supported," we review the decision "to determine if the trial court made an error of law or abused its discretion." *Id.* We will reverse a decision "for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.*

The Pennsylvania Supreme Court has explained the reason for applying an abuse of discretion standard to termination decisions:

> [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even

where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*Id.* at 826-27 (citations omitted).

A trial court may terminate parental rights only after finding grounds for termination existed under Section 2511(a) and that termination is in the child's best interest under Section 2511(b). Although the trial court terminated Father's parental rights pursuant to several subsections of Section 2511(a), we need only conclude that its decision was proper under any one subsection of Section 2511(a). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we conclude that the trial court properly terminated Father's parental rights pursuant to Section 2511(a)(2).

Section 2511(a)(2) provides:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

To terminate parental rights pursuant to Section 2511(a)(2), the moving party must produce clear and convincing evidence of the following: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003).

Here, the trial court found the following:

> The case history revealed Father's ongoing inability to provide care for or control of Child due to his failure to remedy the conditions that brought the Child into care. Specifically, Father failed to meet specific SCP objectives. These SCP objectives included attendance at anger management and parenting classes and maintaining consistent visitation with Child. The record demonstrates that this court, DHS and [the community umbrella agency ("CUA")] consistently reminded Father of the importance of taking advantage of services to be reunited with his Child. This message was further reinforced to the Father in[] Dr. Kai Syvertensen's psychological evaluation and recommendations. Father, nevertheless, had either refused or proved unable to follow these basic recommendations. His refusal or inability to co-operate with CUA and the court has made it impossible for this court to order that he be reunited with his Child.
>
> At the Termination of Parental Rights Hearing, [Ms. Morrison][3] testified that Child was originally brought into care due to Mother's drug use. Ms. Morrison testified that Father had failed his SCP Objectives which included (1)

---

[3] The trial court found Morrison's testimony credible and accorded it "great weight." Trial Court Opinion, filed May 11, 2018, at 6.

> attending anger management classes; (2) parenting classes; and (3) that Father follow the recommendations of Dr. Syvertsten's psychological examination, which recommended that he receive mental health counseling. Ms. Morrison testified that Father never attended parenting classes or anger management classes. Ms. Morrison also testified that Father was inconsistent with visitation set up for Child.

Trial Court Opinion, filed May 11, 2018, at 5-6 (citations omitted) ("1925(a) Op."). The court concluded Father was unable to remedy the conditions that brought Child into care. *Id.* at 7.

The trial court's factual findings are supported by the record, and it did not abuse its discretion when it determined that DHS established by clear and convincing evidence that Father's incapacity, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and that Father could not remedy the causes of the incapacity, neglect or refusal. Father failed to meet his objectives and frequently did not attend offered visits. Although in his brief he mentions military training as a potential reason to deny the petition for termination, this service was not mentioned at the hearing or anywhere else in the record. Nor does it contradict the clear and convincing evidence of his failure to parent Child, or stand as evidence of his ability to remedy the situation.

Father next challenges the trial court's findings under Section 2511(b), arguing the trial court did not have sufficient evidence from which it could conclude termination was in Child's best interest.

Section 2511(b) provides:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.

23 Pa.C.S.A. § 2511(b).

The focus under Section 2511(b) is not on the parent, but on the child. *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa.Super. 2008) (*en banc*). Pursuant to Section 2511(b), the trial court must determine "whether termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1286 (Pa.Super. 2005). This Court has explained that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into [the] needs and welfare of the child." *Id.* at 1287.

Here, the trial court found the following:

> Ms. Morrison testified that Child was doing well in her pre-adoptive foster home and that the Child's foster parent provide[s] the Child with her daily needs. Ms. Morrison testified that the last time she had visited the pre-adoptive home was on March 6, 2018 and that she found the pre-adoptive home to be safe and Child bonded to her foster parent. Ms. Morrison also testified that the termination of Father's parental rights would not cause irreparable harm to the Child and that it would be in Child's best interest.

1925(a) Op. at 6 (citations omitted).

Contrary to Father's suggestion, the record supports the trial court's findings and its conclusion that termination would be in Child's best interest, considering Child's "developmental, physical and emotional needs and welfare." *See* 23 Pa.C.S.A. § 2511(b). The testimony supported that Child was

bonded with Foster parent and that although Father played with and fed Child during visits, Child would not suffer irreparable harm if Father's parental rights were terminated.

In his final issue, Father maintains the trial court erred in changing Child's permanency goal to adoption.[4] He argues the court did not question the appropriateness of Father's objectives, and stated that "Father's absence contributed to the court's inability to ascertain the extent of his progress toward alleviating the circumstances which necessitated the original placement." Father's Br. at 21.

We review a court's order changing the placement goal to adoption for an abuse of discretion. *In re N.C.*, 909 A.2d 818, 822 (Pa.Super. 2006). Section 6351(f) of the Juvenile Act, in pertinent part, requires a court to review, *inter alia*, the following at permanency review hearings:

> (1) The continuing necessity for and appropriateness of the placement.
>
> (2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.
>
> (3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.
>
> (4) The appropriateness and feasibility of the current placement goal for the child.

_____

[4] "Questions regarding the propriety of an order granting or denying a goal change petition are . . . discrete inquiries requiring an analysis of interests exquisitely separable from those interests reviewed in questions relating to the involuntary termination of parental rights." *In re R.I.S.*, 36 A.3d 567, 575 (Pa. 2011).

- 12 -

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6) Whether the child is safe.

42 Pa.C.S.A. § 6351(f). When determining whether to change the goal, the trial court must focus on the child and determine the goal with reference to the child's best interests, not those of the parents. ***In re N.C.***, 908 A.2d at 823. "Safety, permanency, and well-being of the child must take precedence over all other considerations." ***Id.*** (emphasis deleted); ***see also In re A.K.***, 906 A.2d 596, 599 (Pa.Super. 2006) (finding statutory factors "clearly place the trial court's focus on the best interests of the child" (quoting ***In re C.V.***, 882 A.2d 481, 484 (Pa.Super. 2005)).

Similar to the court's findings under Section 2511(b), its conclusion that a change in the permanency goal to adoption would be in Child's best interest is supported by the record. The court did not abuse its discretion in changing the goal.

Decree affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/8/19