J-S16016-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Z.C.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: P.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 249 EDA 2021 |

Appeal from the Order Entered December 23, 2020
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000907-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: Z.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: P.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 250 EDA 2021 |

Appeal from the Order Entered December 23, 2020
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000294-2019

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McLAUGHLIN, J.:                **FILED JULY 20, 2021**

P.C. ("Mother") appeals from the orders terminating her parental rights

to Z.R. ("Child") and changing Child's permanency goal to adoption. Mother

argues the evidence was insufficient to terminate her parental rights and to

change Child's permanency goal to adoption. She also contends the court

_____

[*] Former Justice specially assigned to the Superior Court.

erred in not appointing separate counsel to represent Child's legal interest. We affirm.

In December 2019, Philadelphia Department of Human Services ("DHS") filed a petition to change Child's goal to adoption and a petition to terminate Mother's parental rights. The trial court held a hearing at which the following testimony was adduced:

> [Case manager Sabria] Bell testified an Order of Protective Custody (OPC) was filed on 2/19/2019, based on concern that Mother was under the influence of drugs when the Child was in her care. The Child was removed from Mother's care and Adjudicated Dependent on 4/30/2019, based on present inability of both of her parents to care for her.[1] Since that date, the Child has been in DHS custody.
>
> Ms. Bell testified the initial single case plan for the family was developed in July 2019 and Mother's objectives were to obtain drug and alcohol treatment, obtain suitable housing, attend visitation and sign releases for information. She noted that Mother was aware of her objectives and that her compliance was necessary for reunification to occur. Ms. Bell testified Mother's current objectives are the same and obtaining a parenting capacity evaluation was also added. She noted that drug and alcohol monitoring and treatment were objectives because Mother was under the influence of drugs when . . . Child came into care. Ms. Bell testified Mother's drug of choice was PCP.
>
> Ms. Bell testified Mother was engaged in substance abuse treatment at Tri-State and received Suboxone as a treatment modality. Mother was referred to [the Clinical Evaluation Unit ("CEU")] for assessments, and most recently she attended one in July 2020. Mother failed to comply with the assessment ordered in November 2020, according to a report received from CEU on 11/05/2020. She noted that Mother had given birth to a child, A.G., born [in March 2020]

---

[1] The court found aggravated circumstances existed based on the termination of Mother's parental rights to older children.

and that child tested positive for PCP. Ms. Bell testified Mother had never provided her with documentation that she . . . successfully completed a drug and alcohol program.

Regarding drug screens, Ms. Bell testified Mother tested positive for PCP on 12/11/2019, and has not undergone any other drug screens at CEU.[2] Mother is receiving drug screens at Tri-State and they schedule screening every three months and claim the only substance present in the screens is Suboxone, however, Mother has not provided documentation of those alleged negative screens. Ms. Bell has concerns about [Child] being with Mother because of her continued drug use, noting that Mother's baby was born in March 2020, with PCP in her system and Mother has not addressed her drug issue.

Ms. Bell testified Mother receives mental health treatment at Best Behavioral Health and attended the program on January 2020, July 2020 and the last time she attended was [September 2020]. Mother is not actively attending at the present time. Mother has not provided her with documentation of successfully completing a mental health program, and that would cause concern for the return of [Child] to her care.

Regarding housing, Ms. Bell testified Mother currently resides at . . . Hagerman St., Philadelphia, PA. She has made efforts to see the home in the last six months, however, Mother does not make herself available for a walkthrough. Mother has never provided her with documentation of a rental lease agreement. Therefore, Ms. Bell testified she cannot assess the home and make a recommendation of whether it is appropriate, and this causes her concern about [Child] being at the home with Mother.

Ms. Bell testified Mother informed her that she is not employed and receives unemployment payments. However. Mother has not provided documentation of how she supports herself, and this causes concerns about [Child] being in Mother's care. Further, Mother was referred to ARC for

---

[2] The CEU was not conducting random drug screens due to the COVID-19 pandemic. N.T., 12/23/20, at 24.

parenting, housing and employment, however, she has not completed any of those programs.

Regarding visitation, Ms. Bell testified Mother's visits began as supervised and were never expanded beyond that level because of Mother's minimal compliance of her goals. She noted that she had the opportunity to be present during some of Mother's visits and Mother has cursed when upset and visits had to be stopped early or ended when Mother would become erratic.

Ms. Bell testified Mother was referred to Dr. Dugal for a Parenting Capacity Evaluation (PCE), however, it was not completed because Dr. Dugal had a difficult time contacting Mother. Ms. Bell opined that Mother is not able to care for the Child at this time because she has not completed her objectives and her aggressive behavior is a concern.

Ms. Bell testified the Child lives with her Pre-Adoptive Foster Parent, L.L., and she has had the opportunity to see them together. [Child] loves her foster Parent, and the Child gets excited when she sees her, and they are very affectionate with each other. The Child hugs and loves on her Foster Parent and they have a great relationship and are bonded. L.L. meets all of the Child's needs and the Child looks to L.L. for love, affection, safety and support. Ms. Bell opined that the Child may know who her Mother is, however, she understands that L.L. is the one who takes care of her. She believes the Child would not suffer irreparable harm if Mother's parental rights were terminated and it would be in the Child's best interests to be adopted.

Mother was the next witness to testify. She stated she attends mental health treatment at Best Behavioral Health Center for three years and speaks to her therapist weekly on the telephone. Regarding her drug issues, Mother testified she was using PCP in March 2020, when her youngest Child was born, but stopped using after the baby was born. She began attending a drug and alcohol program at Tri-State. She talks to a therapist monthly and receives a prescription medication of Suboxone. She denies use of any other drug.

Mother testified she signed Releases for all the programs for Ms. Bell. She noted she resides in a one-bedroom apartment on Hagerman Street and is able to care for her daughter.

Regarding visitation, Mother testified she visits her Child twice a week, either at the Agency or on video calls. Mother stated she received a Certificate of completing a parenting class at 1101 Chestnut St., Philadelphia before the COVID period began. Regarding drug screens, Mother testified she did not remember when she last tested positive for PCP. She desired to undergo random drug screens, however, was prevented from doing so because the courts were closed because of COVID.

Mother testified Ms. Bell lied about not being able to assess the apartment because Ms. Bell always wanted to set up a specific time and she would not come at the time that Mother requested. Regarding her income, Mother stated she receives unemployment and cannot find a job now, because no jobs are available.

On cross-examination by Kristina Helmers, Esq., attorney for DHS, Mother stated she was not able to provide documentation to Ms. Bell of her substance abuse treatment at Tri-State because she could not get down there. Mother did not recall her contact with CEU on 7/23/20 where she told them she no longer wanted to complete [the] drug and alcohol assessment. Mother did not recall her contact with CEU on 8/03/2020 where she told them she was busy and could not complete the assessment. Mother did not recall on 8/07/2020 when she hung up the telephone during the assessment. Mother testified Ms. Bell never asked for documentation regarding her unemployment income and therefore, she did not provide it. Mother testified she has a copy of the rental lease to her apartment; however, she did not provide it to Ms. Bell.

Trial Ct. Op., filed Feb. 25, 2021, at 12-16 ("1925(a) Op.") (internal citations omitted).

The court found termination proper under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). It also changed Child's permanency goal to adoption. Mother filed a timely notice of appeal.

Mother raises the following issues:

1. Whether the trial court erred or abused its discretion in determining that [DHS], had met its burden of proof by clear and convincing evidence that [Mother] evidenced a settled purpose of relinquishing her claim to the child or has refused or failed to perform parental duties, for at least six months immediately preceding the filing of the petition.

2. Whether the trial court erred or abused its discretion in determining that Petitioner, DHS, had met its burden of proof that [Mother] has shown repeated and continued incapacity, abuse, neglect or refusal, or that such incapacity, abuse, neglect or refusal causing his child to be without essential parental care, control or subsistence necessary for the child's physical or mental well-being;

3. Whether the trial court erred or abused its discretion in determining that Petitioner, DHS, had met its burden of proof that the conditions and causes or any such incapacity, abuse, neglect or refusal cannot or will not be remedied by [Mother];

4. Whether the trial court erred or abused its discretion in determining that Petitioner, DHS, had met its burden of proof that the conditions which led to the removal of the child continue to exist;

5. Whether the trial court erred or abused its discretion in determining that Petitioner, DHS, had met its burden of proof that the services or assistance reasonably available to [Mother] are not likely to remedy the conditions which led to the removal of the child within a reasonable period of time and erred or abused its discretion in determining that DHS made reasonable efforts to reunify this family;

6. Whether the trial court erred or abused its discretion in determining that Petitioner, DHS, had met its burden of proof that services or assistance were reasonably available to [Mother];

7. Whether the trial court erred or abused its discretion in determining that Petitioner, DHS, had met its burden of proof that changing the child's permanency goal to adoption and terminating [Mother's] rights would best serve the needs and welfare of the child.

. . .

- 6 -

8. Whether the [t]rial court erred in declining to appoint an attorney for the child for the termination hearing on the basis of her being too young to verbalize her preferred outcome where:

· there was no record of the appointed child advocate/guardian *ad litem* having attempted to ascertain her preference verbally or in any other way;

· 23 Pa.C.S.A. [§] 2313(a) requires that the child's legal interests must be represented, and where there is no record of the Trial Court having ascertained the position of the child advocate as to her legal interests;

or

· there is no record of the [t]rial [c]ourt having ascertained whether the child advocate had considered the child's other legal interests potentially at stake, for example her rights to connection to her siblings and other biological relatives, the possibility of inheritance through her parents and their lineage, etc.

Mother's Br. at 5-6 (footnote and emphases omitted).

We will first address Mother's last issue, in which she argues the court erred in not appointing independent counsel to represent Child's legal interest. Mother argues this issue is non-waivable. Mother notes the court expressly declined to appoint legal counsel and contends there is no record that Child's legal interest was considered by Child's guardian *ad litem* ("GAL"). She claims that legal counsel would have protected Child and better developed the record for the court to make an appropriate needs and welfare assessment. She claims "[t]he record was only superficially developed for the court to make the appropriate needs and welfare assessment under § 2511(b)." Mother's Br. at 26.

Mother has not waived her claim that the court erred in not appointing counsel to represent Child's legal interest. In *In re Adoption of K.M.G.*, 240 A.3d 1218, 1236 (Pa. 2020), the Pennsylvania Supreme Court concluded that we may *sua sponte* review the record to determine whether the trial court appointed legal counsel and determined that the child's legal interest and best interest did not conflict. We will therefore review the merits of Mother's claim.

A trial court may properly determine that it need not appoint separate legal counsel if the child's views cannot be ascertained because of the child's young age. In *In re T.S.*, the subject children were two and three years old, and the Pennsylvania Supreme Court found that their legal interests, "which . . . are synonymous with the child's preference . . . were not ascertainable during the termination proceedings." 192 A.3d 1080, 1089 (Pa. 2018). It found "there can be no conflict between an attorney's duty to advance a subjective preference on the child's part which is incapable of ascertainment, and an attorney's concurrent obligation to advocate for the child's best interests as she understands them to be." *Id.* at 1090.

Here, Child was not yet three years old at the final hearing. The court permissibly determined that her preference was unascertainable. It therefore did not err in not appointing counsel to represent Child's legal interest.

In her first six issues, Mother argues DHS did not establish grounds for termination by clear and convincing evidence. She contends that Bell testified that Mother was engaged in programs to address substance abuse and mental health and that she maintained a relationship with her daughter. Further,

although Mother had signed the releases and the providers allegedly gave verbal confirmation of services, both Bell and Mother had trouble getting documentation. She argues that "COVID-19 disruptions were at least in part responsible" for the difficulty. Mother's Br. at 17. She further claims that for one of the providers, the last time Bell contacted the provider was a month before the hearing, and "[t]his level of monitoring is not in conformity with the current local administrative court order," and does not meet the clear and convincing evidence standard. *Id.* at 10-11. Mother claims that both she and Bell testified that she was remedying her drug use.[3] Mother further claims that the court shifted the burden to her. She points to its statement that to avoid termination, she had to provide documentation that she complied with the services. As to Section 2511(a)(2), she argues that the evidence revealed the conditions that led to placement had been addressed by ongoing drug treatment.

"A party seeking termination of parental rights bears the burden of establishing grounds for termination 'by clear and convincing evidence.'" ***In re Adoption of K.C.***, 199 A.3d 470, 473 (Pa.Super. 2018) (quoting ***In re Z.S.W.***, 946 A.2d 726, 728 (Pa.Super. 2008)). Clear and convincing evidence is evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of

_____

[3] Mother also asserts a claim that the court erred in admitting two exhibits, which allegedly contained hearsay. This claim was not included in her Pa.R.A.P. 1925(b) statement or in her Statement of Questions Involved. She therefore has waived this claim.

the precise facts in issue." *Id.* (quoting *In re Z.S.W.*, 946 A.2d at 728-29). "We accept the findings of fact and credibility determinations of the trial court if the record supports them." *Id.* "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion." *Id.*

Termination of parental rights is controlled by Section 2511 of the Adoption Act. *See In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007). Here, Mother argues the court erred in finding grounds for termination under Section 2511(a). She did not raise on appeal a claim that the court erred in finding termination was in Child's best interest under Section 2511(b), and we will therefore not discuss that section.[4]

Under Section 2511(a), "the focus is on the conduct of the parent," and the party seeking termination "must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." *Id.* We will affirm the trial court's decision as to Section 2511(a) where the court properly terminated parental rights pursuant to any one subsection of 23 Pa.C.S.A. § 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

Here, we will determine whether the court properly terminated Mother's rights under 23 Pa.C.S.A. § 2511(a)(2). That provision permits termination

---

[4] Mother argues that, if the court had appointed legal counsel, such counsel would have developed a claim under Section 2511(b), but makes no argument that, based on the evidence presented at the hearing, the court erred in finding termination proper under Section 2511(b).

where "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being," and the "conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." 23 Pa.C.S.A. § 2511(a)(2).

Section 2511(a)(2) thus requires the moving party to produce clear and convincing evidence of three elements: (1) the parent's repeated and continued incapacity, abuse, neglect or refusal to discharge parental duties; "(2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003).

The trial court found DHS established by clear and convincing evidence that grounds for termination existed:

> [THE COURT]: All right, considering all the evidence in this case -- and it's pretty much clear, convincing and essentially uncontradicted, but here it is contradicted, that is by the testimony of the mother.
>
> I give great weight to the testimony of Ms. Bell, who has been on this case for a considerable period of time. She knows the case inside and out, and her [testimony] rings true. I give great weight to her credibility.
>
> I give very little weight to [M]other's credibility, since [M]other's testimony is essentially self-contradictory and inconsistent. And . . . therefore, I am not considering much of what she said as being truthful.

- 11 -

. . .

> THE COURT: -- I find that the evidence supports a finding under the statute, under 2511(a)(1), (2), (5) and (8), based on noncompliance of both parents. In the case of [Mother], there was some verbal attempt to convince the Court that she is in compliance, but [Mother] has the burden of showing documents.
>
> Her testimony alone will not support a finding that she is in compliance. She comes to court and, as I've heard often, parties believe that it is the agency's responsibility to supply their evidence by way of documentary proof that they are engaged in various services, and in compliance.
>
> It's not the Department's responsibility to present evidence to show that you are in compliance. It is, and always has been, the parties' responsibility to present evidence, and I find no evidence whatsoever has been supported to document the so-called attempt by [M]other to come into compliance.
>
> I also find, under 2511(b), that there is parental relationship with [M]other that could not be remedied in a very short period of time, and I believe that the child has a parent bond with the caregiver, and not with [M]other, and there would be no irreparable harm in terminating [M]other's parental rights.

N.T., 12/23/2020, at 74-75.

The trial court did not abuse its discretion. The court credited Bell's testimony, which supports findings that Mother has not maintained her drug rehabilitation and mental health treatment, and has not made progress on her other goals. She tested positive for PCP in March 2020 and did not provide documentation of treatment sessions or of negative drug screens. Mother also did not cooperate with the CEU and did not schedule a home assessment, even though Bell attempted to schedule one on numerous occasions.

- 12 -

The court's reference to Mother's failure to provide documentation of the participation in, or completion of, programs did not shift the burden of proof to Mother. Rather, DHS presented clear and convincing evidence of Mother's failure to complete her objections, as well as testimony of its attempts to obtain information regarding her participation. Mother could have rebutted this testimony with documentation of her participation but did not do so. Further, the lack of documentation and progress was not due to the pandemic. Mother could not obtain random drug tests due to the COVID-19 pandemic and Ms. Bell had difficulty reaching a provider, possibly due to the pandemic. Ms. Bell, however, received information concerning Mother's treatment by contacting the CEU and Mother was able to obtain scheduled drug screens and continue with therapy.

In issue seven, Mother claims the evidence does not support the goal change to adoption, as the evidence supported a finding she remedied the drug abuse that brought Child into care and she and Child can safely be reunited once her home is assessed and Ms. Bell receives documentation of her progress. She further claims that the bond and family connections will best serve Child's interest.

We review a court's order changing the placement goal to adoption for an abuse of discretion. *In re N.C.*, 909 A.2d 818, 822 (Pa.Super. 2006). Section 6351(f) of the Juvenile Act, in pertinent part, requires a court to review, inter alia, the following at permanency review hearings:

(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6) Whether the child is safe.

42 Pa.C.S.A. § 6351(f). When determining whether to change the goal, the trial court must focus on the child and determine the goal with reference to the child's best interests, not those of the parents. *In re N.C.*, 909 A.2d at 823. "Safety, permanency, and well-being of the child must take precedence over all other considerations." *Id.*; *see also In re A.K.*, 906 A.2d 596, 599 (Pa.Super. 2006) (finding statutory factors "clearly place the trial court's focus on the best interests of the child") (quoting *In re C.V.*, 882 A.2d 481, 484 (Pa.Super. 2005)).

Here, the trial court changed Child's goal to adoption, finding that, under the totality of the evidence, a goal change was in Child's best interest:

This Court finds the record sustains the factual findings and legal conclusions regarding . . . Child's current placement. Mother's lack of compliance, and lack of willingness to gain the skills to be a responsible parent for this Child. Most importantly, this Court must act to fulfill [Child's] right to

- 14 -

have proper parenting and fulfillment of her potential in a permanent, healthy, safe environment. Here[,] the totality of the evidence supports this Court's conclusion that termination of Mother's parental rights and a goal of adoption is in [Child's] best interest.

1925(a) at 20.

The court did not abuse its discretion. Based on the evidence presented, it was in Child's best interest to change the goal to adoption. The placement was still necessary and Mother did not make sufficient progress towards alleviating the need for the placement, and the testimony established that Child had a bond with foster mother.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/20/2021