J-S06018-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.A.B.H., A MINOR | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.H., FATHER | : : : : : : : : | |
| | : | No. 2684 EDA 2019 |

Appeal from the Order Entered August 27, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000870-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: J.A.B.H., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.H., FATHER | : : : : : : | |
| | : | No. 2685 EDA 2019 |

Appeal from the Order Entered August 27, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000486-2019

BEFORE:  LAZARUS, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED APRIL 06, 2020**

D.H. ("Father") appeals from the order terminating his parental rights to J.A.B.H. ("Child") and the order changing Child's goal to adoption. We conclude the trial court did not err or abuse its discretion when it terminated Father's parental rights. We affirm.

Child was born in March 2018. At birth, Child tested positive for opioids, marijuana, and Percocet, and suffered from withdrawal symptoms. The

Philadelphia Department of Humans Services ("DHS") obtained a protective order in April 2018, and the court adjudicated Child dependent. In July 2018, Child was placed with foster parents, with whom she remains today. N.T., 8/27/19, at 46.

In July 2019, DHS filed a petition for goal change to adoption and a petition to terminate Father's parental rights. The court held a hearing in August 2019, at which Community Umbrella Agency ("CUA") caseworker Sabrina Bell testified that CUA invited Father to the single case plan meetings, but Father did not participate. N.T., 8/27/19, at 47. She testified that Father's objectives included to obtain safe and suitable housing; maintain involvement with Child; engage in ARC for housing, employment, and parenting services; comply with drug and alcohol services; have random drug screens; and attend supervised visits. *Id.* at 50.

As for the random drug screens, Father tested positive on July 22, 2019 for PCP and cannabis, tested positive on August 8, 2019 for PCP, and did not appear on August 1, 2019 for an assessment. *Id.* at 51. Father has not provided an address to DHS for a home assessment, and DHS was unaware of Father's new address until the day of the hearing. *Id.* at 52. Father has not engaged in mental health services, has not engaged in ARC services, and has not attended visits with Child. *Id.* at 53. Bell testified that Father has had no compliance with his objectives. *Id.*

Bell further testified that Child does not know who Father is, and there would not be any irreparable harm or detrimental impact to Child if the court

terminated Father's rights. *Id.* at 54-55. Bell pointed out that Child had been in care since 2018 and Father had never visited with Child. *Id.* at 55.

Bell testified that Father works at Rite Aid, and Father told her that he did not attend the visits because of work. *Id.* at 59. She stated that they did not try to work around his schedule because "[Father] was trying to get his money together for the house he was trying to get in order to get the girls" and he "was trying to work as much as possible." *Id.* at 60. The CUA also did not offer any parenting classes, other than those offered at ARC, that would work with Father's schedule.

Bell testified Child was doing "phenomenal" in the home of the foster parents. *Id.* at 56. Foster parents treat Child as if she is their own. Child gets upset when foster father steps out of sight. *Id.* Bell noted that the foster parents "talk long term" with Child and that "they want to see her [d]o good in life." *Id.* She stated that the foster parents "express their feelings toward [Child]," and they really care about her. *Id.* at 57. Bell testified it would do irreparable harm to Child if she was removed from foster parents. *Id.*

Father testified that he worked at Rite Aid, but had been offered a job at Coca Cola. *Id.* at 62. He also was in the process of getting a new house. *Id.* He testified that he could not attend visits with Child on the days offered because of work, and he was waiting for CUA to change the days. *Id.* at 63. The CUA did not offer parenting classes outside of ARC, and he enrolled in a drug and alcohol program that met on Mondays and Tuesdays. *Id.* He had enrolled in the program the week before the hearing. *Id.* at 68.

The trial court changed Child's permanency goal to adoption. The trial court also found that termination of Father's parental rights was proper under 23 Pa.C.S.A. § 2511(a)(1) and (2), as well as under Section 2511(b). Regarding Section 2511(a)(1), the court found Father evidenced a settled purpose to relinquish parental claim and refused or failed to perform parental duties, noting Father did not have any visits with Child since she entered care over a year before the hearing. The court stated that it "did not find it credible that in the course of a whole year you could not work out with CUA a day to visit." *Id.* at 75. Child was approximately a year and a half old at the time of the termination hearing. The court noted that it had held permanency review hearings every three months, and Father could have raised any issue with visitation at the hearings. *Id.*

The Court further found termination proper under Section 2511(b). It concluded it was in Child's best interest to terminate Father's parental rights. *Id.* at 76. The court found that "given the fact that Father, by his own admission, has not had any visits with his child in the year and half that she has been in care, there is no reason for this court to believe that there is any sort of bond." *Id.* at 77. It stated that Child does not know Father and "[t]he only parents that [Child] actually knows are the foster parents that she's currently with, with whom she's been with for over a year." *It.* It noted that Child had become "very bonded to [foster parents]." *Id.*

Father filed timely Notices of Appeal. He raises the following issues:

1. Did the Trial judge rule in error that the Philadelphia City Solicitor's Office met its burden of proof that Father's parental rights to his child be terminated.

2. Did the trial judge rule in error that the termination of Father's parental rights would best serve the needs and welfare of the children.

3. Did the Trial judge rule in error that the Philadelphia City Solicitor's Office met its burden of proof that the goal be changed to adoption.

4. Did the judge rule in error that it was in the child's best interest to change the goal to adoption.

Father's Br. at 3.

Father's first two issues challenge the termination of Father's parental rights to Child. When we review termination of parental rights cases, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (quoting *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012)). "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion." *In re Adoption of K.C.*, 199 A.3d 470, 473 (Pa.Super. 2018). We may find an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *In re Adoption of S.P.*, 47 A.3d at 826.

Our Supreme Court has explained the reasons for applying an abuse of discretion standard of review in termination of parental rights cases:

[U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even

where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*Id.* at 826-27 (citations omitted).

A party seeking to terminate parental rights has the burden of establishing grounds for termination by clear and convincing evidence. ***In re Adoption of K.C.***, 199 A.3d at 473. Clear and convincing evidence means evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." ***Id.*** (quoting ***In re Z.S.W.***, 946 A.2d 726, 728-29 (Pa.Super. 2008)).

Termination of parental rights is controlled by Section 2511 of the Adoption Act. ***In re L.M.***, 923 A.2d 505, 511 (Pa.Super. 2007). Section 2511 requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Id.* (citations omitted).

Where the trial court has terminated parental rights pursuant to multiple subsections of Section 2511(a), we need only agree with the trial court's decision as to one subsection, as well as to its analysis under Section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we will address only the court's decision to terminate pursuant to Section 2511(a)(1). That subsection provides that a parent's rights to a child may be terminated if:

> [t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1). "With respect to any petition filed pursuant to subsection (a)(1) . . . , the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S.A. § 2511(b).

Subsection 2511(a)(1) requires the moving party to prove by clear and convincing evidence that the subject parent engaged in "conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008). The parental obligation is a "positive duty which requires affirmative performance" and "cannot be met by a merely passive interest in

the development of the child." ***In re C.M.S.***, 832 A.2d 457, 462 (Pa.Super. 2003) (quoting ***In re Burns***, 379 A.2d 535, 540 (Pa. 1977)). Indeed,

> [p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

***In re B.,N.M.***, 856 A.2d 847, 855 (Pa.Super. 2004) (citations omitted).

Here, the trial court concluded that Father evinced a settled purpose to relinquish his parental claim to Child and refused or failed to perform parental duties. It noted Father did not attend any visits with Child and Father had not claimed at prior review hearings that the visits failed to happen because the CUA would not schedule them when he was not working.

The record supports the trial court's findings, and its conclusion that termination was proper under Section 2511(a)(1) was not an abuse of discretion. Father failed to complete any of his permanency goals, and never once visited with Child since her placement.

We next address whether the trial court erred in finding termination would best meet Child's developmental, physical and emotional needs and welfare under Section 2511(b).

Under Section 2511(b), the court must consider "the developmental, physical and emotional needs and welfare of the child" to determine if termination of parental rights is in the child's best interest. *See* 23 Pa.C.S.A. § 2511(b). The focus under Section 2511(b) is not on the parent, but on the child. *In re Adoption of R.J.S.*, 901 A.2d 502, 514 (Pa.Super. 2006). This Court has explained that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into [the] needs and welfare of the child." *In re C.M.S.*, 884 A.2d at 1287. The trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.*

The trial court found that termination would best meet Child's "developmental, physical and emotional needs and welfare." *See* 23 Pa.C.S.A. § 2511(b). It found there was no bond between Child and Father, reasoning that Father had no visits with Child and Child did not know Father. It noted that Child was "very bonded" with foster parents, who were "[t]he only parents that [Child] actually knows." N.T., 8/27/19, at 77.

The record supports the trial court's findings and its finding that termination was proper under Section 2511(b) was not an abuse of discretion or error of law.

Father's last two issues challenge the order changing Child's permanency goal to adoption. We review such an order for an abuse of discretion. *In re N.C.*, 909 A.2d 818, 822 (Pa.Super. 2006). When determining whether to change the goal, the trial court must focus on the child

and determine the goal with reference to the child's best interests, not those of the parents. **In re N.C.**, 908 A.2d at 823. "Safety, permanency, and well-being of the child must take precedence over all other considerations." **Id.** (emphasis deleted); **see also In re A.K.**, 906 A.2d 596, 599 (Pa.Super. 2006) (finding statutory factors "clearly place the trial court's focus on the best interests of the child") (quoting **In re C.V.**, 882 A.2d 481, 484 (Pa.Super. 2005)).

Here, the trial court changed Child's goal to adoption, finding that the disposition was "best suited to the protection and physical, mental and moral welfare of the child." Permanency Review Order, filed Aug. 27, 2019, at 1-2. The record supports the court's findings and it did not abuse its discretion in changing the goal to adoption. Child did not know Father, and Child was thriving with foster parents.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date:* <u>4/6/2020</u>

- 10 -