**In re Z.S.W., a/k/a Z.J.**

**Appeal of Allegheny County Office of Children, Youth and Families, Appellant.**

**In re Z.S.W., a/k/a Z.J., a Minor.**

**Appeal of Z.S.W., Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 23, 2007.

Filed April 1, 2008.

Sheila W. Scanlon, Pittsburgh, for Allegheny County CYF, appellant.

Jennifer A. Staley, Pittsburgh, for Z.S.W., appellant.

Margaret G. Gold, Cabot, for L.C., participating party.

Kiersten M. Frankowski, Pittsburgh, for A.J., participating party.

BEFORE: MUSMANNO, ORIE MELVIN and KELLY, JJ.

OPINION BY MUSMANNO, J.:

¶ 1 In these consolidated appeals, the Allegheny County Office of Children, Youth and Families ("CYF") and Z.S.W., through her the *guardian ad litem,* appeal from the Order of the trial court denying the Petition to involuntarily terminate L.C.'s parental rights to his daughter Z.S.W. (D.O.B. 7/29/04). We reverse and remand.

¶ 2 The trial court summarized the facts of this case as follows:

The child in this case, Z.S.W., was born on July 29, 2004. This child came to the attention of CYF because of Z.S.W. having tested positive for cocaine at birth. Z.S.W. has been out of her mother's care ever since. [Z.S.W. was immediately placed in the care of her current foster mother. At the time of Z.S.W.'s birth, another man had been identified as Z.S.W.'s alleged father.]

The child was adjudicated dependant on January 5, 2005. Mother and alleged father were given Family Serv[ice] Plans, which [required them] to visit with the children, get into drug and alcohol treatment, maintain proper housing, seek employment, ensure their children attend school and submit to urine screens.[fn] Both mother and alleged father failed in every area. The agency offered numerous services to help mother and alleged father remedy their problems, however neither mother or alleged father attempted to, at any level, comply with their plans.

[fn] Natural mother has four other children with alleged father and they are all in care as well.

The goal was changed to adoption on December 1, 2005. L.C.[,] in March of 2006[,] contacted CYF regarding the possibility that Z.S.W. could be his child.[fn] Essentially, the conversation consisted of informing the caseworker that he and mother had an affair that lasted a month, however, mother went back to her long[-]time paramour. The caseworker stated that she informed the hearing officer about L.C. and requested a paternity test, which was denied. In August of 2006, L.C. requested that a paternity test be given, which was granted.

[fn] L.C. informed his adult daughter that it was possible that she has a sister and **she** contacted CYF.

A [Petition seeking the termination of parental rights] was filed April 19, 2006, and later amended to include L.C. on September 19, 2006. Aggravated circumstances were found against L.C. on November 29, 2006. L.C. was notified that he was the biological father of Z.S.W. on November 30, 2006.

Trial Court Opinion, 5/30/07, at 3–4 (emphasis and footnotes in original).

¶ 3 On March 2, 2007, the trial court entered an Order terminating the parental rights of Mother and the alleged father. However, the trial court concluded that CYF did not prove by clear and convincing evidence that grounds for termination existed as to L.C. The trial court's determination rested primarily upon its finding that CYF had failed to offer timely and appropriate services to L.C. Therefore, the trial court denied CYF's Petition for the termination of the parental rights of L.C. Thereafter, both CYF and Z.S.W. filed timely appeals.

■ ¶ 4 CYF and Z.S.W. raise the following issues on appeal:

1. Whether the trial court erred in denying CYF's Petition for involuntary termination of L.C.'s parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5) and (8)?

2. Whether the trial court erred in determining that CYF had not met its burden pursuant to § 2511(b) in establishing by clear and convincing evidence that termination of L.C.'s parental rights would best serve the needs and welfare of the child?

See Brief for CYF at 4, Brief for Z.S.W. at 4.

¶ 5 " 'The standard of review in cases involving the termination of parental rights is limited to the determination of whether the orphans' court's decree is supported by competent evidence.' " *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super.2002) (quoting *In re Adoption of J.D.S.*, 763 A.2d 867, 870 (Pa.Super.2000)).

¶ 6 As the party seeking termination, CYF bore the burden of establishing, by clear and convincing evidence that grounds existed for terminating Father's parental rights. " 'The standard of clear and convincing evidence means testimony that is

so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue.' " *In re J.D.W.M.*, 810 A.2d at 690 (quoting *In re Adoption of C.A.W.*, 453 Pa.Super. 277, 683 A.2d 911, 914 (1996)).

¶ 7 Termination of parental rights is controlled by statute. *In re R.L.T.M.*, 860 A.2d 190, 192–93 (Pa.Super.2004) (citing 23 Pa.C.S.A. § 2511). Section 2511 provides in relevant part, that

> [t]he rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * *
>
> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reason-able period of time and termination of the parental rights would best serve the needs and welfare of the child.
>
> * * *
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a).

¶ 8 Moreover, pursuant to 23 Pa.C.S.A. § 2511(b), the trial court, in terminating the rights of a parent, shall give primary consideration to the developmental, physical, and emotional needs and welfare of a child. Section 2511(b) provides,

> (b) **Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b). "[S]atisfaction of the requirements in only *one* subsection of Section 2511(a), along with consideration of the provisions in Section 2511(b), is sufficient for termination." *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super.2004) *(en banc).*

Upon review, we conclude that CYF presented clear and convincing evidence that support the termination of L.C.'s parental rights pursuant to sections 2511(a)(1) and 2511(b).

■ ¶ 9 To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. *In re Adoption of R.J.S.*, 901 A.2d 502, 510 (Pa.Super.2006). In addition,

> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

*In re Adoption of Charles E.D.M.*, 550 Pa. 595, 708 A.2d 88, 91 (1998).

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*Id.* at 92 (citation omitted).

¶ 10 In this case, CYF filed a Petition for the involuntary termination of L.C.'s parental rights on September 19, 2006. The operative period for the application of section 2511(a)(1) is the six-month period preceding the filing of the Petition, *i.e.* March 19, 2006, through September 19, 2006.

¶ 11 The trial court found that CYF did not prove that L.C. evidenced a settled purpose of relinquishing his parental claim to Z.S.W. within the requisite six-month period in order to terminate parental rights pursuant to section 2511(a)(1). Trial Court Opinion, 5/30/07, at 12. According to the trial court, L.C. attempted the level of parenting consistent with **"his and the agency's knowledge of parentage."** *Id.* (emphasis in original). According to the trial court, due to the fact that L.C. did not initially have the results of a paternity test, "[t]his case is different[ ] from a situation where a man has had good reason to believe that a child could be his and has delayed in taking steps to determine paternity." *Id.* Upon our review, we conclude that the record does not support the trial court's conclusions.

¶ 12 In support of its determination, the trial court found that L.C. "came forward when he became aware that [Z.S.W.] could be his [child]." Trial Court Opinion, 5/30/07, at 12. Contrary to this finding, the record establishes that L.C. became aware that he may be Z.S.W.'s father around January of 2006. L.C. testified that he knew that he may have been Z.S.W.'s father for one year prior to the January 12, 2007 termination hearing. N.T., 1/12/07, at 78. L.C. specifically testified that he was aware that he may have been Z.S.W.'s father for a couple of months before he told his adult daughter, R.W. *Id.* However, it was R.W. who contacted CYF stating that Z.S.W. may be her biological sister. *Id.* at 6. R.W. further explained that she had heard that there was an adoption pending for Z.S.W., and that she did not want to lose her family. *Id.* R.W. then requested that CYF contact L.C. *Id.* at 39. After receiving the telephone call from R.W., CYF contacted L.C. about this case. *Id.* at 25. Despite the fact that he was aware that he

may be Z.S.W.'s father, L.C. did not personally initiate contact with CYF.

¶ 13 Moreover, the record does not support the trial court's determination that L.C. attempted some level of parenting during the relevant six-month period. When CYF first spoke with L.C. in March 2006, L.C. specifically stated that he did not want custody of Z.S.W. *Id.* at 25. Rather, L.C. indicated that it was R.W. who wanted to have custody and a relationship with Z.S.W. *Id.* At that time, the caseworker specifically asked L.C. to come to the office to speak with CYF. *Id.* at 27. However, L.C. did not attend the meeting with CYF. *Id.* Furthermore, L.C. did not request visitation during the six-month period. *Id.* at 28. In fact, no evidence exists that L.C. attempted to make any contact with Z.S.W., much less parent her. Accordingly, we conclude that the trial court erred when it determined that CYF failed to meet its burden in proving that L.C. refused to perform his parental duties.

¶ 14 We decline to accept the trial court's rational that L.C. was only required to "attempt the level of parenting consistent with his and the agency's knowledge of parentage." The crux of the trial court's statement is that L.C. was not required to perform any parental duties until he received the results of the paternity test. To adopt the trial court's rationale would relieve all fathers of their parental duties until their parentage was confirmed by a paternity test.

■ ¶ 15 Having concluded that CYF presented clear and convincing evidence that L.C. had refused to perform his parental duties during the six-month period, the trial court was required to consider (1) L.C.'s explanation for his conduct; (2) the post-abandonment contact between L.C. and Z.S.W.; and (3) consideration of the effect of termination of parental rights on Z.S.W. pursuant to Section 2511(b).

¶ 16 In this case, the trial court relied upon L.C.'s explanation that he did not attempt to undertake his parental duties out of his concern for Mother's safety since her relationship with her paramour had involved domestic violence. Trial Court Opinion, 5/30/07, at 9. However, the record does not support L.C.'s explanation. Not only is there no evidence of a history of domestic violence, L.C.'s own actions during the six-month period belie his explanation. Despite his alleged concerns concerning the possibility that Mother may be subjected to domestic violence if he came forward and requested a paternity test, L.C. attended the August 3, 2006 review hearing where Mother and her paramour were in attendance, voiced his belief that he was the biological father of Z.S.W., and requested a paternity test. N.T., 1/12/07, at 27. This alleged concern provides no explanation as to why L.C. did not attempt to perform his parental duties as to Z.S.W., who was not in the care of Mother or her paramour at the time. Accordingly, we conclude that the record does not support the trial court's determination that L.C. proffered an explanation for his conduct.

■ ¶ 17 With respect to the second prong of the analysis, L.C.'s post-abandonment conduct included only one request to CYF for visitation with Z.S.W., which he made in December 2006. *Id.* at 31. L.C. did not file any motions or seek court-intervention to secure visitation with Z.S.W. or attempt to make any other contact with Z.S.W., such as sending her cards, letters or gifts. Moreover, after receiving confirmation of his paternity of Z.S.W., L.C. did not challenge the Order against him finding aggravated circumstances with respect to Z.S.W. According-

ly, the record establishes the L.C. had no contact with Z.S.W.

¶ 18 Finally, the trial court found that CYF failed to establish that termination would best serve the needs and welfare of Z.S.W. CYF presented the testimony of Dr. Neil Rosenblum, a court-appointed psychologist, concerning the needs and welfare of Z.S.W. Dr. Rosenblum evaluated Z.S.W. and her foster mother. Dr. Rosenblum testified that Z.S.W. is a happy child and affectionate with her foster mother. N.T., 1/12/07, at 63. Dr. Rosenblum explained that since Z.S.W. has been in this placement her entire life, Foster mother is the only mother figure that she knows. *Id.* Z.S.W. is also very attached to foster mother's biological daughter, with whom Z.S.W. is being raised as sisters. *Id.* Dr. Rosenblum further stated that Z.S.W. is attached to foster mother and feels safe and secure. *Id.* Dr. Rosenblum opined that having a connection to a biological parent is not critical for Z.S.W. *Id.* at 65. Dr. Rosenblum further opined that the "safety and well being of [Z.S.W.], in my opinion, depends upon her remaining in her [foster home] . . . ." *Id.* at 66.

¶ 19 The trial court noted that it found Dr. Rosenblum's testimony least compelling and criticized his opinions on the basis that he did not interview L.C. Trial Court Opinion, 5/30/07, at 10. While, Dr. Rosenblum may not have been able to testify regarding the interaction between Z.S.W. and L.C., he was certainly able to provide his professional opinions concerning Z.S.W. and her mental well being.

¶ 20 The trial Court also specifically found that Z.S.W. "was at an age that would be conducive to the introduction of a

father if done right." *Id.* at 14 n. 9. However, upon our review of the record, we conclude that the record does not support this finding. The record is silent concerning what age a child, or specifically Z.S.W., would have to be such that the introduction of a new parent figure would be successful.

¶ 21 Moreover, the trial court improperly applied the best interest analysis of section 2511(b) by considering "the effects of **not terminating** the parental rights, of this father to this child and determin[ing] that not terminating **now,** would be in the best interest of this child." *Id.* (emphasis in original). In this case, the trial court placed undue emphasis upon promises by L.C. that he would do whatever it takes, made after the filing of the termination Petition. Section 2511(b) specifically states that the trial court shall not consider those actions taken after the filing of the termination Petition where termination is appropriate under section 2511(a)(1). 23 Pa.C.S.A. § 2511(b).

¶ 22 The courts of this Commonwealth have long held that a child's life "simply cannot be put on hold in the hope that [he] will summon the ability to handle the responsibilities of parenting." *In re Adoption of M.E.P.,* 825 A.2d 1266, 1276 (Pa.Super.2003) (citing *In Re: J.T. and R.T.,* 817 A.2d 505, 509 (Pa.Super.2003)). "[A]dequate parenting requires *action* as well as *intent.*" *In re J.W.,* 396 Pa.Super. 379, 578 A.2d 952, 959 (1990) (emphasis in original). In this case, L.C. seeks to place Z.S.W.'s on hold while he summons the ability to handle the responsibilities of parenting.[1] Accordingly, we reverse the Or-

---

1. As discussed above, L.C. has made no effort to be a parent to Z.S.W. Moreover, we note that L.C. candidly stated that he has had a drug problem off and on for 20 years. N.T., 1/12/07. In fact, during the pendency of the termination Petition, L.C. sought drug and alcohol treatment at the Salvation Army, through a residential treatment program, but left prior to completing the program. *Id.* at 79–83. L.C. further admitted that he has

der of the trial court, and remand for entry of a decree terminating the parental rights as to L.C.

¶ 23 Order reversed; case remanded for entry of a decree terminating the parental rights of L.C.; Superior Court jurisdiction relinquished.

continued to use drugs off and on since leaving the program. *Id.* at 84. Moreover, at the time of the hearing, L.C. had no home of his own and had resided with his daughter since leaving the Salvation Army's residential treatment program. *Id.* at 80. Accordingly, we conclude that L.C. has failed to take any actions to move toward the ability to provide adequate parenting for Z.S.W.