J-S18027-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: R.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.F., MOTHER | : | No. 2022 MDA 2019 |

Appeal from the Order Entered November 26, 2019
In the Court of Common Pleas of York County
Juvenile Division at No(s): CP-67-DP-0000263-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: T.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.F., MOTHER | : | No. 2023 MDA 2019 |

Appeal from the Order Entered November 26, 2019
In the Court of Common Pleas of York County
Juvenile Division at No(s): CP-67-DP-0000262-2018

BEFORE: KUNSELMAN, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.: **FILED: APRIL 30, 2020**

Appellant, S.F. ("Mother"), appeals from the orders entered in the York County Court of Common Pleas, which changed the permanency goal from reunification to adoption, following the York County Office of Children, Youth & Families' ("CYF") petition for a permanency hearing. We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

In its opinions, the trial court fully and correctly set forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them. Procedurally, we add that the court appointed legal counsel for R.F. and T.F. ("Children") on December 2, 2019. On December 12, 2019, Mother filed timely notices of appeal, as well as contemporaneous statements of errors complained of on appeal per Pa.R.A.P. 1925. This Court consolidated Mother's appeals *sua sponte* on December 26, 2019.

Mother raises the following issues for our review:

> DID THE COURT COMMIT AN ABUSE OF DISCRETION IN FAILING TO CONSIDER THE FAILURES OF [CYF] IN PROVIDING SERVICES WHEN CHANGING THE GOAL?
>
> DID THE COURT COMMIT AN ABUSE OF DISCRETION IN FINDING TH[AT] CHANGING THE COURT-ORDERED GOAL WAS IN THE BEST INTEREST OF…CHILDREN DESPITE THE PARENTAL BOND BETWEEN MOTHER AND…CHILDREN?

(Mother's Brief at 7).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the Honorable N. Christopher Menges, we conclude Mother's issues merit no relief. The trial court opinions comprehensively discuss and properly dispose of the questions presented. (*See* Trial Court Opinions, filed January 7, 2020, at 7-15) (finding: **(1)** contrary to Mother's assertion that CYF failed to provide services, record indicates Mother was receiving services from Catholic Charities for several months prior to November 26, 2019 permanency review hearing; specifically, David Kansburg, family advocate with Catholic Charities, was assisting Mother

with housing, employment, and drug and alcohol treatment; Mr. Kansburg testified that since previous hearing on September 12, 2019, he had met with Mother only 4 times, and Mother had cancelled 6 appointments with him; even though Catholic Charities' policy was to cease services after 3 missed appointments, Mr. Kansburg kept Mother's services open with understanding he would terminate services if Mother missed any more appointments; further, Mother's completion of Nurturing Skills Competency Assessment with Catholic Charities in August 2019, demonstrates she received services, as directed by CYF; **(2)** while Mother's bond with Children weighs in Mother's favor, Mother's past and continued lack of progress weighs more heavily against Mother; as of November 26, 2019 hearing, Mother had failed to alleviate circumstances which necessitated original placement; further, Mother had not complied with permanency plan; in 15 months prior to hearing, Mother repeatedly tested positive for drugs; Mother also failed to maintain stable employment, obtain stable housing, and cooperate with services; despite Mother's statements that she intends to undergo effort to be reunified with Children, she has consistently failed to demonstrate her willingness and ability to do so; returning Children to Mother, under circumstances, is not in best interests of Children).  Accordingly, we affirm based on the trial court's opinions.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>04/30/2020</u>

# IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA
## ORPHAN'S COURT DIVISION

IN THE INTEREST OF:                        :        No.    CP-67-DP-26₂-2018

T.F.                                                       :

                                                            :

                                                            :

---

**MEMORANDUM OPINION IN SUPPORT OF ORDER PURSUANT TO RULE 1925(a)(2)(ii) OF THE PENNSYLVANIA RULES OF APPELLATE PROCEDURE**

AND NOW, this 7th day of January, 2020, the Court is in receipt of Mother's Notice of Appeal and Statement of Matters Complained of Pursuant to Rule 1925 of the Pennsylvania Rules of Appellate Procedure. The Court hereby reaffirms its Order dated November 26, 2019, changing the Court ordered goal from reunification to adoption.

## FACTUAL AND PROCEDURAL HISTORY

S.F. (hereinafter "Mother") and M.F. (hereinafter "Father"), are the natural parents of R.F. , born November 2014; and T.F. born August 2013 (hereinafter collectively the "Children", or individually by name). On or about August 1, 2018, an Application for Emergency Protective Custody was entered regarding T.F. setting forth the following allegations:

"1. YCOCYF had prior involvement with the family and half siblings, [K.L.] and [P.B.], due to substance abuse by mother[.]

2. On July 17, 2018, YCOCYF received a referral regarding the minor child, T.F. and her sibling, R.F. due to allegations of substance abuse by the mother; those children are with maternal relatives in Pennsylvania and three other siblings are with paternal friends in Ohio.

1

3. The mother has a past history of drug usage, her drugs of choice being heroin and crack cocaine.

4. Allegedly, the mother had been "clean" for four (4) years; however, information received was that recently the mother had relapsed and was using crack cocaine.

5. The mother was residing at the Rodeway Inn with her significant other, D.D. , and the minor children, T.F. and R.F.

6. YCOCYF went to the Rodeway Inn accompanied by a York City Police Officer at which time the mother was found sitting outside the motel room; the mother did not appear to be under the influence of any substances.

7. Due to the allegations, YCOCYF requested that the mother submit to a drug screen; however, the mother refused to submit to a drug screen.

8. YCOCYF contacted the mother's probation officer who told the mother that she was required to submit to the drug test; the mother agreed to the test, but could not provide a urine sample.

9. The mother admitted to the caseworker and the drug tester that she had smoked crack cocaine; the drug tester told the mother they would return in three (3) hours to complete the testing.

10. Later that day, the drug tester returned to the Rodeway Inn, but the mother was not there and her whereabouts were unknown.

11. The children were left by the mother in the custody of her significant other, D.D., who advised YCOCYF that the mother had signed over guardianship of the minor child and sibling; YCOCYF learned that the mother did not execute any guardianship paperwork.

12. The mother advised YCOCYF that she had an appointment with her probation officer at 10:00 a.m.; she also advised her probation officer that she had an appointment with YCOCYF at the same time as her probation appointment; YCOCYF did not have a scheduled appointment with the mother.

13. On July 20, 2018, YCOCYF spoke with the mother's significant other who was staying at the Super 8 Motel with the minor child and sibling, and

2

reported that the mother had gone inpatient at White Deer Run; however, YCOCYF later learned that the mother did not enter the inpatient treatment program until July 21, 2018.

14. The exact whereabouts of the father are currently unknown and there are allegations that the father may also have substance abuse issues.

15. The mother's significant other, D. D. contacted YCOOCYF asking for financial assistance with the children, then stated he was unable to continue to care for the children.

16. YCOCYF learned that D. D. has a lengthy criminal history in the State of Maryland; it is believed that he may have an outstanding warrant from Philadelphia County, PA.

17. YCOCYF has concerns for the safety of the minor child in the custody of the parents and mother's significant other.

18. YCOCYF will also be filing an Application for Emergency Protective Custody regarding the sibling, R. F. contemporaneously herewith."

*Application for Emergency Protective Custody, p. 3-4, August 1, 2018.*

The Children were adjudicated on August 27, 2018, and placed with family friends, A. C. and M. C. . *Order of Adjudication and Disposition, August 27, 2018.* On October 16, 2018, upon motion by YCOCYF, the Children were placed in foster care with M. R. and D. R. *Order Regarding Modification of Child's Placement, October 16, 2018.* Shortly thereafter, the first status review hearing in this matter was held on October 31, 2018, at which time Mother's progress was moderate. The Status Review Order dated October 31, 2018, states as follows:

3

"Mother was in treatment at White Deer Run. She reports that she successfully completed the program. She will provide a certificate of completion to the Agency. She then went to Seize the Day and completed 90 days there. She was concerned about the amount of relapse in the program so she transferred to Sober Living where she is currently living. She [is] completing IOP there tomorrow. She is required to be sober and have a job to remain there. She is stepping down to Blue Prints outpatient therapy tomorrow…Mother is drug tested by Probation, Sober Living, and the Agency. FUN was not present at this hearing to present evidence of Mother's testing…Mother attends IOP and Group therapy 3xs/week….Mother just started orientation for Aerotek to begin work soon. She was assigned a team from Pressley Ridge to supervise her visitation. Mother missed two intake appointments scheduled for 10/26 and 10/29/18…She did not contact PR before missing the appointments. She is to meet with PR today to schedule twice weekly supervised visitation. She has not had a visit since 10/10/18."

*Status Review Order, October 31, 2018.*

Additionally, it is noted in the said order that "The Hearing Officer drove home the need for Mother to be cooperative and consistent with services and the possible consequences if she is not. The Agency also needs to be consistent in their provision of services and maintenance of communication." *Id.* Finally, the Children had made substantial progress in their new foster care placement with M. R. and D.R.

A permanency review hearing was held on or about January 15, 2019, at which time Mother was in moderate compliance with the permanency plan and the Children were in full compliance with the plan. *Permanency Review Order, January 15, 2019.* The Permanency Review Order dated January 15, 2019, states as follows: "Mother is currently residing in a sober living home that is not appropriate for children. She is seeking different housing. She is employed full-time through a temporary agency at RHI

4

Magnesita. Mother reported that she successfully completed outpatient counseling through Blue Prints, but YCOCYF has not received verification. Mother has been cooperative with the Pressley Ridge Team and Pressley Ridge reports that visits are appropriate and Mother is engaged with the children." _Id._

A status review hearing was held on or about March 20, 2019, and it was indicated that the Children continue to do well in their foster care placement. _Status Review Order, March 20, 2019._ The Status Review Order dated March 20, 2019, provides as follows with respect to Mother:

> "Mother is employed full-time through a temp agency at RHI Magnesita. Mother was cooperative with the Pressley Ridge Team who supervised 23 visits...and report that all was going well with visits. PR closed unsuccessfully on March 11, 2019 due to missed appointments or late appearances. To date, Mother has not acquired stable housing. Since January 22, 2019, F.U.N. has attempted random drug tests of Mother. In 16 attempts Mother has been unavailable 16 times. Today she tested positive for Adderall and THC. She referred to a prescription, but did not produce a prescription from Dr. James at Recovery Wellness Center."

_Id._

A permanency review hearing was held on or about June 19, 2019, at which time it was indicated that the Children were continuing to do well in their foster care placement; however, Mother was not in compliance with the permanency plan and still had no acquired appropriate housing for the Children. _Permanency Review Order, June 19, 2019._ Further, Mother did not appear for six out of eight scheduled drug tests; and

5

on May 13, 2019 and May 23, 2019 Mother tested positive for THC. *Id.* Lastly, Mother's visits with the Children are being supervised by maternal grandmother. *Id.*

At the status review hearing held on or about July 25, 2019, Mother provided proof of current employment through Triple D Restaurants, and indicated that she was continuing to seek appropriate housing for the Children. *Status Review Order, July 25, 2019.* Mother began working with Catholic Charities to seek housing and assist her with maintaining a budget and other financial matters. *Id.* Mother tested positive twice for THC and buprenorephine (for which she has no prescription) on July 25, 2019, the same day as the hearing. *Id.* At the next status review hearing held on or about September 12, 2019, it was reported to the Court that Mother continues to test positive for substances other than prescribed drugs. Since July 25, 2019, there were 14 attempts to test, Mother tested positive for THC four (4) times, refused one time, was unavailable seven (7) times, and unable to provide a sample two (2) times. *Status Review Order, September 12, 2019.* Throughout the reporting period, the Children continue to do well in their foster care placement. *Id.*

The Permanency Review Orders dated November 26, 2019 subject to this appeal were the result of a permanency review hearing held on the same date. With respect to Mother, "[t]here ha[d] been minimal compliance with the permanency plan." *Permanency Review Orders, November 26, 2019.* Testimony was also offered at the

6

hearing that Mother continued to fail drug tests and continued to be uncooperative with services.

## ISSUES ON APPEAL

The following issues are raised in Appellant's 1925b Statement, each will be discussed in turn below:

1. *The Court committed an abuse of discretion in failing to consider the failures of the agency in providing services when changing the goal.*

2. *The Court committed an abuse of discretion in changing the court ordered goal in spite of York County Children Youth and Family's position that the goal should not be changed.*

3. *The Court committed an abuse of discretion in failing to consider Mother's medical condition when changing the court ordered goal.*

4. *The Court committed an abuse of discretion in finding that the changing of the Court ordered goal was in the best interest of the children despite the parental bond between Mother and the children.*

## DISCUSSION

"In cases involving a court's order changing the [court-ordered] goal…to adoption, [the] standard of review is abuse of discretion. To hold that the trial court abused its discretion, we must determine its judgment was manifestly unreasonable, that the court disregarded the law, or that its action was the result of partiality, prejudice, bias, or ill will." *In the Interest of L.T.*, 158 A.3d 1266, 1276 (Pa.Super. 2017). The reviewing court is bound by the trial court's determination of facts, but not by the trial court's "inferences, deductions and conclusions." *Id.*

7

"[T]he focus of dependency proceedings is upon the best interest of the children and that those considerations supersede all other concerns, 'including the conduct and the rights of the parents." *Id.* "[A] child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." *Id.*

Pursuant to 42 Pa.C.S. § 6351(f), the following matters are to be determined at a permanency review hearing:

"(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6) Whether the child is safe.

(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made."

*42 Pa.C.S. § 6351(f)(1)-(6) and (9).*

Upon review of the forgoing, the court shall determine one of the following:

8

"(1) If and when the child will be returned to the child's parent, guardian or custodian in cases where the return of the child is best suited to the safety, protection and physical, mental and moral welfare of the child.

(2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited for safety, protection and physical, mental and moral welfare of the child.

(3) If and when the child will be placed with a legal custodian in cases where the return to the child's parent, guardian or custodian or being placed for adoption is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(4) If and when the child will be placed with a fit and willing relative in cases where return to the child's parent, guardian or custodian, being placed for adoption or being placed with a legal custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child."
*42 Pa.C.S. § 6351(f.1)*.

"Evidence of conduct by the parent that places the health, safety or welfare of the child at risk, including evidence of the use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk, shall be presented to the court by the county agency or any other party at any disposition or permanency hearing whether or not the conduct was the basis for the determination of dependency." *42 Pa.C.S. § 6351(f.2)*.

"While not required by Pennsylvania statute or rule of court, the request to change a goal can come in many forms...nothing precludes the court from initiating a change of goal." *In the Interest of L.T.*, at 1278.

9

***1. The Court committed an abuse of discretion in failing to consider the
failures of the agency in providing services when changing the goal.***

It is denied that the Court committed an abuse of discretion in failing to consider the failures of the agency in providing services when changing the goal. Contrary to Mother's assertion that the agency failed to provide services to her, the record indicates that Mother was receiving services with Catholic Charities as of the date of the Permanency Review Hearing held on November 26, 2019. David Kansburg, a family advocate, of Catholic Charities has been working with Mother on housing, employment, stabilization, and drug and alcohol treatment. *Report to the Court for Permanency Review Hearing, p. 2, 11/20/2019.* Mr. Kansburg testified at the hearing that since the previous hearing held on or about September 12, 2019, he had only met with Mother four (4) times, and Mother had cancelled six (6) appointments with him. He added that Catholic Charities' policy was to end services after three (3) missed appointments, but as a courtesy to Mother, he was keeping her services open with the understanding that he would be terminating services if she missed anymore appointments. *Hr'g Tr., p. 13-15.* It is noted that Mother completed the Nurturing Skills Competency Assessment with Catholic Charities in August of 2019, further evidencing that Mother was receiving services, as directed by the agency. Therefore, the Court did not commit an abuse of discretion, because it is reasonably ascertained from the record that the agency did not fail to provide services to Mother, as she was working with Mr. Kansburg from Catholic

10

Charities for several months prior to the Permanency Review Hearing on November 26, 2019.

> **2.** ***The Court committed an abuse of discretion in changing the court ordered goal in spite of York County Children Youth and Family's position that the goal should not be changed.***

It is denied that the Court committed an abuse of discretion in changing the court ordered goal in spite of York County Children Youth and Family's position that the goal should not be changed. As stated above, the Court may initiate a change of goal, without the recommendation of the agency. In this case, the Children were placed on August 2, 2018, and adjudicated on August 27, 2018. The reason for the adjudication was Mother's substance abuse, specifically crack/cocaine and Father's whereabouts being unknown. As of the Permanency Review Hearing held on November 26, 2019, the Children had been adjudicated 15 months and the conditions which led to the adjudication still existed, specifically, Mother was continuing to test positive for drugs and Father, while located and present at the hearing, indicated that he was not a resource for the Children.

It is stated in the Permanency Review Orders dated November 26, 2019, that with respect to Mother, "There has been minimal compliance with the permanency plan, in that Mother was referred to and working with Catholic Charities." *Permanency Review Orders, November 26, 2019.* Mr. Kansburg from Catholic Charities testified at the hearing that since the previous hearing held on or about September 12, 2019, he had only met with Mother four (4) times, and Mother had cancelled six (6) appointments with him.

11

*Hr'g Tr., p. 13-15.* The Permanency Review Orders dated November 26, 2019, further indicated that Mother "does continue drug testing through Families United Network." *Permanency Review Orders, November 26, 2019.* At the hearing, Ms. Lopez from Families United Network testified that Mother was tested two (2) times per week. *Hr'g Tr., p. 19.* Ms. Lopez further testified that since the prior hearing on September 12, 2019, Mother had tested positive for THC on September 12, 2019 and positive for cocaine, THC and opiates on October 2, 2019. *Id. at 20.* Mother claims that she had a prescription for the positive test on October 2, 2019, but did not provide the prescription to Families United Network. *Id.*

Therefore, the Court did not commit an abuse of discretion in changing the court ordered goal in spite of York County Children Youth and Family's position that the goal should not be changed, because Mother has not made progress towards alleviating the circumstances which necessitated the original placement, nor has she complied with the permanency plan developed for the Children in the past 15 of the last 22 months that the Children have been in placement.

**3.  *The Court committed an abuse of discretion in failing to consider Mother's medical condition when changing the court ordered goal.***

It is denied that the Court committed an abuse of discretion in failing to consider Mother's medical condition when changing the court ordered goal. The Court is not unsympathetic to Mother's medical condition, that does not alleviate Mother's responsibility to keep Families United Network, and the Agency, informed of any and all

12

medications that Mother is taking which may cause her to have a positive drug test. Additionally, prescription drugs were not the only substances which Mother tested positive for on October 2, 2019. Mother has a long history of substance abuse and it appears to the Court that she continues with struggle with her addiction. Therefore, the Court did not commit an abuse of discretion in failing to consider Mother's medical condition when changing the court ordered goal, because Mother continues to test positive for substances which are not prescribed substances, and further Mother has failed to provide to Families United Network and the Agency proof of her prescription medications.

### 4. The Court committed an abuse of discretion in finding that the changing of the Court ordered goal was in the best interest of the children despite the parental bond between Mother and the children.

It is denied that the Court committed an abuse of discretion in the finding that the changing of the court ordered goal was in the best interest of the Children despite the parental bond between Mother and the Children. While the bond between parent and child is considered, it is only one of the factors which the Court considers. The bond between Mother and the Children is in Mother's favor, however, Mother's past and continued lack of progress weighs heavily against Mother.

Attached to the Order of Adjudication and Disposition entered for each child was an Appendix of Court Ordered Services and Conditions, wherein Mother was to complete a mental health assessment, cooperate with random drug tests, cooperate with an in-home

13

team, cooperate with individual drug and alcohol counseling, and cooperate with group drug and alcohol counseling. Additionally, Mother was to cooperate with supervised visits with the Children, maintain safe, stable, and appropriate housing for the children, and maintain stable and lawful income to support the children. *Order of Adjudication and Disposition, August 27, 2019.*

As of the date of the Permanency Review Hearing on November 26, 2019, Mother has continually failed to alleviate the circumstances which necessitated the original placement, and she has not complied with the permanency plan developed for the Children in the past 15 of the last 22 months that the Children have been in placement. Specifically, over the past 15 months, Mother has repeatedly and continually tested positive for drugs, other than prescription drugs (which she does not always provide a prescription for); Mother has failed to maintain stable employment; Mother has failed to obtain and maintain stable housing; and Mother has failed to cooperate with services. Returning the Children to Mother under the stated circumstances would not be in the Children's best interest. "The courts of this Commonwealth have long held that a child's life 'simply cannot be put on hold in the hope that [she] will summon the ability to handle the responsibilities of parenting. [A]dequate parenting requires action as well as intent." *In Re Z.S.W.,* 946 A.2d 726, 732 (Pa.Super. 2008). Mother states that she intends to put in the work and effort to be reunified with the Children, but she consistently does not follow through with actions.

14

Therefore, the Court did not commit an abuse of discretion in the finding that the changing of the court ordered goal was in the best interest of the Children despite the parental bond between Mother and the Children, because Mother has failed to alleviate the circumstances which necessitated the original placement, and she has not complied with the permanency plan developed for the Children.

## CONCLUSION

For the foregoing reasons, this Court hereby reaffirms its Order dated November 26, 2019, changing the Court ordered goal from reunification to adoption.

BY THE COURT,

N. CHRISTOPHER MENGES, JUDGE

15

**IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA
ORPHAN'S COURT DIVISION**

IN THE INTEREST OF:     :  No.  CP-67-DP-263-2018

R.F.            :

               :

               :

---

## MEMORANDUM OPINION IN SUPPORT OF ORDER PURSUANT TO RULE 1925(a)(2)(ii) OF THE PENNSYLVANIA RULES OF APPELLATE PROCEDURE

**AND NOW,** this 7th day of January, 2020, the Court is in receipt of Mother's

Notice of Appeal and Statement of Matters Complained of Pursuant to Rule 1925 of the

Pennsylvania Rules of Appellate Procedure. The Court hereby reaffirms its Order dated

November 26, 2019, changing the Court ordered goal from reunification to adoption.

### FACTUAL AND PROCEDURAL HISTORY

S.F. (hereinafter "Mother") and M.F. (hereinafter

"Father"), are the natural parents of R.F., born November 2014; and

T.F., born August 2013 (hereinafter collectively the "Children", or individually by

name). On or about August 1, 2018, an Application for Emergency Protective Custody

was entered regarding R.F., setting forth the following allegations:

"1. YCOCYF had prior involvement with the family and half siblings, [K.L.] and [P.B.], due to substance abuse by mother[.]

2. On July 17, 2018, YCOCYF received a referral regarding the minor child, R.F. and her sibling, T.F., due to allegations of substance abuse by the mother; those children are with maternal relatives in Pennsylvania and three other siblings are with paternal friends in Ohio.

3. The mother has a past history of drug usage, her drugs of choice being heroin and crack cocaine.

4. Allegedly, the mother had been "clean" for four (4) years; however, information received was that recently the mother had relapsed and was using crack cocaine.

5. The mother was residing at the Rodeway Inn with her significant other, D.D. , and the minor children, T. F. and R. F.

6. YCOCYF went to the Rodeway Inn accompanied by a York City Police Officer at which time the mother was found sitting outside the motel room; the mother did not appear to be under the influence of any substances.

7. Due to the allegations, YCOCYF requested that the mother submit to a drug screen; however, the mother refused to submit to a drug screen.

8. YCOCYF contacted the mother's probation officer who told the mother that she was required to submit to the drug test; the mother agreed to the test, but could not provide a urine sample.

9. The mother admitted to the caseworker and the drug tester that she had smoked crack cocaine; the drug tester told the mother they would return in three (3) hours to complete the testing.

10. Later that day, the drug tester returned to the Rodeway Inn, but the mother was not there and her whereabouts were unknown.

11. The children were left by the mother in the custody of her significant other, D. D. , who advised YCOCYF that the mother had signed over guardianship of the minor child and sibling; YCOCYF learned that the mother did not execute any guardianship paperwork.

12. The mother advised YCOCYF that she had an appointment with her probation officer at 10:00 a.m.; she also advised her probation officer that she had an appointment with YCOCYF at the same time as her probation appointment; YCOCYF did not have a scheduled appointment with the mother.

13. On July 20, 2018, YCOCYF spoke with the mother's significant other who was staying at the Super 8 Motel with the minor child and sibling, and

2

reported that the mother had gone inpatient at White Deer Run; however, YCOCYF later learned that the mother did not enter the inpatient treatment program until July 21, 2018.

14.    The exact whereabouts of the father are currently unknown and there are allegations that the father may also have substance abuse issues.

15.    The mother's significant other, D. D. subbs, contacted YCOOCYF asking for financial assistance with the children, then stated he was unable to continue to care for the children.

16.    YCOCYF learned that D. D. has a lengthy criminal history in the State of Maryland; it is believed that he may have an outstanding warrant from Philadelphia County, PA.

17.    YCOCYF has concerns for the safety of the minor child in the custody of the parents and mother's significant other.

18.    YCOCYF will also be filing an Application for Emergency Protective Custody regarding the sibling, T. F. contemporaneously herewith."

*Application for Emergency Protective Custody, p. 3-4, August 1, 2018.*

The Children were adjudicated on August 27, 2018, and placed with family friends, A. C. and M. C.: *Order of Adjudication and Disposition, August 27, 2018.* On October 16, 2018, upon motion by YCOCYF, the Children were placed in foster care with M. R. and D. R. *Order Regarding Modification of Child's Placement, October 16, 2018.* Shortly thereafter, the first status review hearing in this matter was held on October 31, 2018, at which time Mother's progress was moderate. The Status Review Order dated October 31, 2018, states as follows:

3

"Mother was in treatment at White Deer Run. She reports that she successfully completed the program. She will provide a certificate of completion to the Agency. She then went to Seize the Day and completed 90 days there. She was concerned about the amount of relapse in the program so she transferred to Sober Living where she is currently living. She [is] completing IOP there tomorrow. She is required to be sober and have a job to remain there. She is stepping down to Blue Prints outpatient therapy tomorrow…Mother is drug tested by Probation, Sober Living, and the Agency. FUN was not present at this hearing to present evidence of Mother's testing…Mother attends IOP and Group therapy 3xs/week….Mother just started orientation for Aerotek to begin work soon. She was assigned a team from Pressley Ridge to supervise her visitation. Mother missed two intake appointments scheduled for 10/26 and 10/29/18…She did not contact PR before missing the appointments. She is to meet with PR today to schedule twice weekly supervised visitation. She has not had a visit since 10/10/18."

*Status Review Order, October 31, 2018.*

Additionally, it is noted in the said order that "The Hearing Officer drove home the need for Mother to be cooperative and consistent with services and the possible consequences if she is not. The Agency also needs to be consistent in their provision of services and maintenance of communication." *Id.* Finally, the Children had made substantial progress in their new foster care placement with M.R. and D.R.

A permanency review hearing was held on or about January 15, 2019, at which time Mother was in moderate compliance with the permanency plan and the Children were in full compliance with the plan. *Permanency Review Order, January 15, 2019.* The Permanency Review Order dated January 15, 2019, states as follows: "Mother is currently residing in a sober living home that is not appropriate for children. She is seeking different housing. She is employed full-time through a temporary agency at RHI

4

Magnesita. Mother reported that she successfully completed outpatient counseling through Blue Prints, but YCOCYF has not received verification. Mother has been cooperative with the Pressley Ridge Team and Pressley Ridge reports that visits are appropriate and Mother is engaged with the children." *Id.*

A status review hearing was held on or about March 20, 2019, and it was indicated that the Children continue to do well in their foster care placement. *Status Review Order, March 20, 2019.* The Status Review Order dated March 20, 2019, provides as follows with respect to Mother:

> "Mother is employed full-time through a temp agency at RHI Magnesita. Mother was cooperative with the Pressley Ridge Team who supervised 23 visits…and report that all was going well with visits. PR closed unsuccessfully on March 11, 2019 due to missed appointments or late appearances. To date, Mother has not acquired stable housing. Since January 22, 2019, F.U.N. has attempted random drug tests of Mother. In 16 attempts Mother has been unavailable 16 times. Today she tested positive for Adderall and THC. She referred to a prescription, but did not produce a prescription from Dr. James at Recovery Wellness Center."

*Id.*

A permanency review hearing was held on or about June 19, 2019, at which time it was indicated that the Children were continuing to do well in their foster care placement; however, Mother was not in compliance with the permanency plan and still had no acquired appropriate housing for the Children. *Permanency Review Order, June 19, 2019.* Further, Mother did not appear for six out of eight scheduled drug tests; and

5

on May 13, 2019 and May 23, 2019 Mother tested positive for THC. *Id.* Lastly, Mother's visits with the Children are being supervised by maternal grandmother. *Id.*

At the status review hearing held on or about July 25, 2019, Mother provided proof of current employment through Triple D Restaurants, and indicated that she was continuing to seek appropriate housing for the Children. *Status Review Order, July 25, 2019.* Mother began working with Catholic Charities to seek housing and assist her with maintaining a budget and other financial matters. *Id.* Mother tested positive twice for THC and buprenorephine (for which she has no prescription) on July 25, 2019, the same day as the hearing. *Id.* At the next status review hearing held on or about September 12, 2019, it was reported to the Court that Mother continues to test positive for substances other than prescribed drugs. Since July 25, 2019, there were 14 attempts to test, Mother tested positive for THC four (4) times, refused one time, was unavailable seven (7) times, and unable to provide a sample two (2) times. *Status Review Order, September 12, 2019.* Throughout the reporting period, the Children continue to do well in their foster care placement. *Id.*

The Permanency Review Orders dated November 26, 2019 subject to this appeal were the result of a permanency review hearing held on the same date. With respect to Mother, "[t]here ha[d] been minimal compliance with the permanency plan." *Permanency Review Orders, November 26, 2019.* Testimony was also offered at the

6

hearing that Mother continued to fail drug tests and continued to be uncooperative with services.

## ISSUES ON APPEAL

The following issues are raised in Appellant's 1925b Statement, each will be discussed in turn below:

1. *The Court committed an abuse of discretion in failing to consider the failures of the agency in providing services when changing the goal.*

2. *The Court committed an abuse of discretion in changing the court ordered goal in spite of York County Children Youth and Family's position that the goal should not be changed.*

3. *The Court committed an abuse of discretion in failing to consider Mother's medical condition when changing the court ordered goal.*

4. *The Court committed an abuse of discretion in finding that the changing of the Court ordered goal was in the best interest of the children despite the parental bond between Mother and the children.*

## DISCUSSION

"In cases involving a court's order changing the [court-ordered] goal…to adoption, [the] standard of review is abuse of discretion. To hold that the trial court abused its discretion, we must determine its judgment was manifestly unreasonable, that the court disregarded the law, or that its action was the result of partiality, prejudice, bias, or ill will." *In the Interest of L.T.*, 158 A.3d 1266, 1276 (Pa.Super. 2017). The reviewing court is bound by the trial court's determination of facts, but not by the trial court's "inferences, deductions and conclusions." *Id.*

7

"[T]he focus of dependency proceedings is upon the best interest of the children and that those considerations supersede all other concerns, 'including the conduct and the rights of the parents." _Id._ "[A] child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." _Id._

Pursuant to 42 Pa.C.S. § 6351(f), the following matters are to be determined at a permanency review hearing:

"(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6) Whether the child is safe.

(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made."

_42 Pa.C.S. § 6351(f)(1)-(6) and (9)._

Upon review of the forgoing, the court shall determine one of the following:

8

"(1) If and when the child will be returned to the child's parent, guardian or custodian in cases where the return of the child is best suited to the safety, protection and physical, mental and moral welfare of the child.

(2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited for safety, protection and physical, mental and moral welfare of the child.

(3) If and when the child will be placed with a legal custodian in cases where the return to the child's parent, guardian or custodian or being placed for adoption is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(4) If and when the child will be placed with a fit and willing relative in cases where return to the child's parent, guardian or custodian, being placed for adoption or being placed with a legal custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child."
*42 Pa.C.S. § 6351(f.1).*

"Evidence of conduct by the parent that places the health, safety or welfare of the child at risk, including evidence of the use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk, shall be presented to the court by the county agency or any other party at any disposition or permanency hearing whether or not the conduct was the basis for the determination of dependency." *42 Pa.C.S. §*

*6351(f.2).*

"While not required by Pennsylvania statute or rule of court, the request to change a goal can come in many forms…nothing precludes the court from initiating a change of goal." *In the Interest of L.T.*, at 1278.

9

*1. The Court committed an abuse of discretion in failing to consider the failures of the agency in providing services when changing the goal.*

It is denied that the Court committed an abuse of discretion in failing to consider the failures of the agency in providing services when changing the goal. Contrary to Mother's assertion that the agency failed to provide services to her, the record indicates that Mother was receiving services with Catholic Charities as of the date of the Permanency Review Hearing held on November 26, 2019. David Kansburg, a family advocate, of Catholic Charities has been working with Mother on housing, employment, stabilization, and drug and alcohol treatment. *Report to the Court for Permanency Review Hearing, p. 2, 11/20/2019.* Mr. Kansburg testified at the hearing that since the previous hearing held on or about September 12, 2019, he had only met with Mother four (4) times, and Mother had cancelled six (6) appointments with him. He added that Catholic Charities' policy was to end services after three (3) missed appointments, but as a courtesy to Mother, he was keeping her services open with the understanding that he would be terminating services if she missed anymore appointments. *Hr'g Tr., p. 13-15.* It is noted that Mother completed the Nurturing Skills Competency Assessment with Catholic Charities in August of 2019, further evidencing that Mother was receiving services, as directed by the agency. Therefore, the Court did not commit an abuse of discretion, because it is reasonably ascertained from the record that the agency did not fail to provide services to Mother, as she was working with Mr. Kansburg from Catholic

10

Charities for several months prior to the Permanency Review Hearing on November 26, 2019.

> **2. The Court committed an abuse of discretion in changing the court ordered goal in spite of York County Children Youth and Family's position that the goal should not be changed.**

It is denied that the Court committed an abuse of discretion in changing the court ordered goal in spite of York County Children Youth and Family's position that the goal should not be changed. As stated above, the Court may initiate a change of goal, without the recommendation of the agency. In this case, the Children were placed on August 2, 2018, and adjudicated on August 27, 2018. The reason for the adjudication was Mother's substance abuse, specifically crack/cocaine and Father's whereabouts being unknown. As of the Permanency Review Hearing held on November 26, 2019, the Children had been adjudicated 15 months and the conditions which led to the adjudication still existed, specifically, Mother was continuing to test positive for drugs and Father, while located and present at the hearing, indicated that he was not a resource for the Children.

It is stated in the Permanency Review Orders dated November 26, 2019, that with respect to Mother, "There has been minimal compliance with the permanency plan, in that Mother was referred to and working with Catholic Charities." *Permanency Review Orders, November 26, 2019.* Mr. Kansburg from Catholic Charities testified at the hearing that since the previous hearing held on or about September 12, 2019, he had only met with Mother four (4) times, and Mother had cancelled six (6) appointments with him.

11

*Hr'g Tr., p. 13-15.* The Permanency Review Orders dated November 26, 2019, further indicated that Mother "does continue drug testing through Families United Network." *Permanency Review Orders, November 26, 2019.* At the hearing, Ms. Lopez from Families United Network testified that Mother was tested two (2) times per week. *Hr'g Tr., p. 19.* Ms. Lopez further testified that since the prior hearing on September 12, 2019, Mother had tested positive for THC on September 12, 2019 and positive for cocaine, THC and opiates on October 2, 2019. *Id. at 20.* Mother claims that she had a prescription for the positive test on October 2, 2019, but did not provide the prescription to Families United Network. *Id.*

Therefore, the Court did not commit an abuse of discretion in changing the court ordered goal in spite of York County Children Youth and Family's position that the goal should not be changed, because Mother has not made progress towards alleviating the circumstances which necessitated the original placement, nor has she complied with the permanency plan developed for the Children in the past 15 of the last 22 months that the Children have been in placement.

3. *The Court committed an abuse of discretion in failing to consider Mother's medical condition when changing the court ordered goal.*

It is denied that the Court committed an abuse of discretion in failing to consider Mother's medical condition when changing the court ordered goal. The Court is not unsympathetic to Mother's medical condition, that does not alleviate Mother's responsibility to keep Families United Network, and the Agency, informed of any and all

12

medications that Mother is taking which may cause her to have a positive drug test. Additionally, prescription drugs were not the only substances which Mother tested positive for on October 2, 2019. Mother has a long history of substance abuse and it appears to the Court that she continues with struggle with her addiction. Therefore, the Court did not commit an abuse of discretion in failing to consider Mother's medical condition when changing the court ordered goal, because Mother continues to test positive for substances which are not prescribed substances, and further Mother has failed to provide to Families United Network and the Agency proof of her prescription medications.

4. ***The Court committed an abuse of discretion in finding that the changing of the Court ordered goal was in the best interest of the children despite the parental bond between Mother and the children.***

It is denied that the Court committed an abuse of discretion in the finding that the changing of the court ordered goal was in the best interest of the Children despite the parental bond between Mother and the Children. While the bond between parent and child is considered, it is only one of the factors which the Court considers. The bond between Mother and the Children is in Mother's favor, however, Mother's past and continued lack of progress weighs heavily against Mother.

Attached to the Order of Adjudication and Disposition entered for each child was an Appendix of Court Ordered Services and Conditions, wherein Mother was to complete a mental health assessment, cooperate with random drug tests, cooperate with an in-home

13

team, cooperate with individual drug and alcohol counseling, and cooperate with group drug and alcohol counseling. Additionally, Mother was to cooperate with supervised visits with the Children, maintain safe, stable, and appropriate housing for the children, and maintain stable and lawful income to support the children. *Order of Adjudication and Disposition, August 27, 2019.*

As of the date of the Permanency Review Hearing on November 26, 2019, Mother has continually failed to alleviate the circumstances which necessitated the original placement, and she has not complied with the permanency plan developed for the Children in the past 15 of the last 22 months that the Children have been in placement. Specifically, over the past 15 months, Mother has repeatedly and continually tested positive for drugs, other than prescription drugs (which she does not always provide a prescription for); Mother has failed to maintain stable employment; Mother has failed to obtain and maintain stable housing; and Mother has failed to cooperate with services. Returning the Children to Mother under the stated circumstances would not be in the Children's best interest. "The courts of this Commonwealth have long held that a child's life 'simply cannot be put on hold in the hope that [she] will summon the ability to handle the responsibilities of parenting. [A]dequate parenting requires action as well as intent." *In Re Z.S.W.,* 946 A.2d 726, 732 (Pa.Super. 2008). Mother states that she intends to put in the work and effort to be reunified with the Children, but she consistently does not follow through with actions.

14

Therefore, the Court did not commit an abuse of discretion in the finding that the changing of the court ordered goal was in the best interest of the Children despite the parental bond between Mother and the Children, because Mother has failed to alleviate the circumstances which necessitated the original placement, and she has not complied with the permanency plan developed for the Children.

## CONCLUSION

For the foregoing reasons, this Court hereby reaffirms its Order dated November 26, 2019, changing the Court ordered goal from reunification to adoption.

BY THE COURT,

N. CHRISTOPHER MENGES, JUDGE

15